No. 22-2742

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

GLEN WILKOFSKY,
*Appellant,*

v.

AMERICAN FEDERATION OF MUSICIANS LOCAL 45;
ALLENTOWN SYMPHONY ASSOCIATION INC,
*Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## BRIEF OF APPELLANT

DANIELLE R. ACKER SUSANJ
NATHAN J. MCGRATH
TESSA E. SHURR
The Fairness Center
500 North Third Street, Suite 600B
Harrisburg, Pennsylvania 17101
Phone: 844.293.1001

*Attorneys for Appellant*

# TABLE OF CONTENTS

Table of Authorities ...................................................................................................ii

Introduction ................................................................................................................1

Jurisdictional Statement ............................................................................................1

Statement of the Issues .............................................................................................2

Statement of Related Cases and Proceedings.........................................................2

Statement of the Case ...............................................................................................2

    I.  Statement of Facts ........................................................................................2

    II.  Procedural History........................................................................................4

    III.Rulings Presented for Review ....................................................................5

Summary of Argument ..............................................................................................5

Argument ....................................................................................................................6

    I.  Mr. Wilkofsky, a Public Employee Under State Law, Stated a Claim for Violation of His First Amendment Rights .................................................6

      A.   Scope and Standard of Review ................................................................6

      B.   Mr. Wilkofsky's Employer, a Public Employer for Government Collective Bargaining, Is a State Actor.................................................................7

      C.   Mr. Wilkofsky Stated a Claim for Violation of His Constitutional Rights Because His Public Employer Is Compelling Him to Support a Union.......17

Conclusion ................................................................................................................19

# TABLE OF AUTHORITIES

## Cases

*Abraham v. Raso,*
   183 F.3d 279 (3d Cir. 1999) ........................................................ 18

*Angelico v. Lehigh Valley Hosp., Inc.,*
   184 F.3d 268 (3d Cir. 1999) ........................................................ 8

*Flores v. Att'y Gen. U.S.,*
   856 F.3d 280 (2017) ..................................................................... 10

*Giovanni v. U.S. Dep't Navy,*
   906 F.3d 94 (3d Cir. 2018) .......................................................... 10

*Groman v. Twp. of Manalapan,*
   47 F.3d 628 (3d Cir. 1995) .......................................................... 17

*Janus v. AFSCME, Council 31,*
   138 S. Ct. 2448 (2018) ..................................................... 4, 18, 19

*Krynicky v. U. of Pittsburgh,*
   742 F.2d 94 (3d Cir. 1984) ...................................................... 15–16

*Mark v. Borough of Hatboro,*
   51 F.3d 1137 (3d Cir. 1995) ........................................................ 8

*McCahon v. Pa. Tpk Comm'n,*
   491 F. Supp. 2d 522 (M.D. Pa. 2007 ..................................... 13–14

*McMillian v. Monroe Cnty.,*
   520 U.S. 781 (1997) ....................................................................... 9

*Ohio Historical Soc'y v. State Emp. Rels. Bd.,*
   613 N.E.2d 591 (Ohio 1993) ...................................................... 10

*Pattern Makers' League of N. Am. v. NLRB,*
   473 U.S. 95 (1985) ....................................................................... 14

*Peltier v. Charter Day Sch., Inc.,*
   37 F.4th 104 (4th Cir. 2022) ....................................................... 12

*Phillips v. Cnty. of Allegheny,*
   515 F.3d 224 (3d Cir. 2008) ......................................................... 7

**Statutes**

5 Ill. Comp. Stat. Ann. 31(LexisNexis 2022) ...................................................... 10

28 U.S.C. § 1291 ..................................................................................................... 1

28 U.S.C. § 1331 ..................................................................................................... 1

28 U.S.C. § 1343 ..................................................................................................... 1

43 P.S. § 1101.101 ................................................................................................. 13

43 P.S. § 1101.301 ............................................................................................. 13, 9

Cal. Gov't Code § 7522.04 (Deering 2022) ....................................................... 10

N.C. Gen. Stat. § 11 .............................................................................................. 12

N.Y. Civ. Serv. Law § 201 (Consol. 2022) ......................................................... 10

Ohio Rev. Code Ann. § 4117.01 (LexisNexis 2022) ......................................... 10

## INTRODUCTION

Glen Wilkofsky, a public employee, sued to stop his public employer from terminating his public employment because of his refusal to be part of a union. There is no dispute that his employer is a public employer, for purposes of state law governing collective bargaining. And the United States Supreme Court just four years ago held that a public employee has the right not to be forced to support a union as a condition of his employment. Mr. Wilkofsky thus stated a claim for the ongoing and threatened violation of his constitutional rights, and the district court's dismissal of the case should be reversed.

## JURISDICTIONAL STATEMENT

Mr. Wilkofsky's First Amended Complaint raised one claim under Section 1983 for the ongoing violation of his First Amendment rights, because his employer and union require that he be a union member and pay union dues as a condition of employment. Appx111-113. The district court accordingly had subject-matter jurisdiction under 28 U.S.C. §§ 1331, 1343. Appx104. Following the district court's dismissal of the case with prejudice, this Court has jurisdiction pursuant to 28 U.S.C. § 1291.

Mr. Wilkofsky brought this civil rights case by a complaint filed April 11, 2022, and an amended complaint filed July 13, 2022. Appx21-22 (Dist. Ct. Docket Report). Mr. Wilkofsky appeals from a final order of the United States District Court of the Eastern District of Pennsylvania, which granted a motion to dismiss his First

Amended Complaint with prejudice and disposed of all of his claims. Appx3-4. That order was entered on August 19, 2022, and Mr. Wilkofsky timely filed his notice of appeal on September 16, 2022. Appx23 (Dist. Ct. Docket Report).

## STATEMENT OF THE ISSUES

**I.   Whether a public employee states a claim for violation of constitutional rights where his public employer threatens to terminate his employment due to his refusal to be a union member or pay dues to a union.**

(Raised by First Amended Complaint, Appx103-115; motions to dismiss, Appx137-185; dismissed with prejudice by final order, Appx3-4.)

## STATEMENT OF RELATED CASES AND PROCEEDINGS

This case has not been before this Court previously, and Appellant is not aware of any other case or proceeding that is in any way related, completed, pending, or about to be presented before this court or any other court or agency, state or federal.

## STATEMENT OF THE CASE

### I.   STATEMENT OF FACTS

Glen Wilkofsky has been the principal timpanist for the Allentown Symphony Orchestra for over two decades. In that role, the Allentown Symphony Association Inc ("Symphony") is his employer, and his position is represented for purposes of collective bargaining by the American Federation of Musicians, Local 45 ("Union"). Appx105 (First Am. Compl. ¶¶ 10–11). Pennsylvania's public employment law, the Public Employe Relations Act ("PERA"), defines the Symphony as a "public employer" and Mr. Wilkofsky as a "public employe," Appx104-105 (First Am. Compl. ¶¶ 9, 11), as the parties agree and the district court recognized. Appx13 (Opinion). In

fact, the Symphony and Union so stipulated when they first engaged in organizing and collective bargaining. Appx83 (Union's Mot. to Dismiss, Ex. E, PLRB Notice & Order of Election ¶ 1). The Symphony receives government funding. Appx105 (First Am. Compl. ¶¶ 13–14).

In 1999, the Union filed a "Petition Under the Public Employe Relations Act," expressing its "desire[] to be certified as a representative of the employes" of the Symphony under Pennsylvania's public employment law. Appx106 (First Am. Compl. ¶ 19); Appx117-119 (First Am. Compl. Ex. A). The Symphony never disputed its status as a public employer, as provided for in PERA. Appx106 (First Am. Compl. ¶ 24). Ultimately, the Union and Symphony engaged in collective bargaining and entered into a contract under which all parties agreed that the Symphony was a public employer. Appx107 (First Am. Compl. ¶ 28).

Following an election, the Pennsylvania Labor Relations Board certified the Union as the exclusive representative for certain public employees under the Public Employe Relations Act. Appx107 (First Am. Compl. ¶¶ 29, 31); Appx127-130 (First Am. Compl., Ex. C, PLRB Certification Order). As authorized by the public employment law, the Union and Symphony have entered into collective bargaining agreements that control the terms and conditions of Mr. Wilkofsky's employment with the Symphony, Appx107 (First Am. Compl. ¶¶ 32–33), and that contain provisions that state law authorizes only for public employers and public-employee unions to use. Most notably for this appeal, the current contract permits the

Symphony to terminate employees if they do not join the Union or remain Union members. Appx108 (First Am. Compl. ¶¶ 36–37).

Mr. Wilkofsky won his role as the principal timpanist for the Allentown Symphony Orchestra in 2001. Appx6 (Opinion); Appx108 (First Am. Compl. ¶ 38). Because his public employer, the Symphony, told him he was required to be a dues-paying member of the union, he joined as a member shortly thereafter. Appx6 (Opinion); Appx108 (First Am. Compl. ¶ 41). But in 2020, following the United States Supreme Court's decision in *Janus v. AFSCME, Council 31*, 138 S. Ct. 2448 (2018), Mr. Wilkofsky decided to stop paying the Union. Appx7 (Opinion); Appx109 (First Am. Compl. ¶ 46). As a result, the Union expelled him from membership, Appx7 (Opinion), and threatened him with "legal process."  His employer, meanwhile, has threatened to terminate him, has not allowed him to perform, and will not allow him to perform unless he rejoins the Union as a member. Appx7 (Opinion); Appx109-111 (First Am. Compl. ¶¶ 46–48, 50, 52, 56–58, 60–61).

## II.  PROCEDURAL HISTORY

Mr. Wilkofsky filed his initial complaint on April 11, 2022, Appx24-33, raising a single count of violation of his First and Fourteenth Amendment rights under Section 1983. His complaint sought prospective relief preventing the defendants from requiring him to be a union member and from forbidding him from performing in the future because he is not, among other relief. Appx31-33 (Initial Compl., Prayer for Relief). The appellees moved to dismiss, which Mr. Wilkofsky opposed. Appx21-22

(Dist. Ct. Docket Report). The district court issued an order and opinion and granted the motions to dismiss without prejudice, giving Mr. Wilkofsky leave to refile. Appx5-19, 22. Mr. Wilkofsky filed his First Amended Complaint, raising the same claim with additional factual allegations, on July 13, 2022. Appx103-115. The appellees again moved to dismiss, Appx137-185, and the district court again ordered dismissal, this time with prejudice, relying on its original opinion. Appx3-4. Mr. Wilkofsky then timely appealed. Appx1-2.

## III.    Rulings Presented for Review

The district court granted Appellees' first motions to dismiss without prejudice, issuing an opinion and order. Appx5-19. Mr. Wilkofsky then filed a First Amended Complaint, which the district court dismissed with prejudice via an order relying on its earlier opinion. Appx3-4, 6-19.

## SUMMARY OF ARGUMENT

By statute, the Commonwealth of Pennsylvania has chosen the entities who are public employers, to whom it grants the power to sit at the bargaining table as public employers. The Symphony is one of those public employers. In making this policy choice, the Legislature empowered the Symphony to act as a public employer and state actor when it comes to collective bargaining. Acting in its capacity as a public employer, the Symphony has, in fact, participated in public-sector collective

bargaining with the union that represents its public employees.[1] Following their public-sector collective bargaining, the Symphony and Union jointly adopted a contract with provisions that unconstitutionally require Symphony employees—defined by state law as public employees for purposes of collective bargaining and related matters—to be union members and pay the Union on threat of termination. That requirement violates the United States Supreme Court's recent decision in *Janus*. 138 S. Ct. at 2486. Nevertheless, the Symphony is threatening Mr. Wilkofsky with termination if he continues in his choice not to be a card-carrying union member. Ultimately, the Symphony's position is simple: it wants the power and benefits of collective bargaining as a public employer without the attendant constitutional obligations. But because state actors cannot escape the Constitution, Mr. Wilkofsky has stated a claim, and the decision below should be reversed.

## ARGUMENT

### I.    MR. WILKOFSKY, A PUBLIC EMPLOYEE UNDER STATE LAW, STATED A CLAIM FOR VIOLATION OF HIS FIRST AMENDMENT RIGHTS

#### A.    Scope and Standard of Review

This Court's review in this matter is plenary, as the district court failed to properly apply the law to determine whether Mr. Wilkofsky had stated a claim,

---

[1] For purposes of its motion to dismiss, the Union conceded that if the Symphony were held to be a state actor or acting under color of state law, the Union, too, is a state actor or acting under color of state law. *See* Br. in Supp. re: Mot. to Dismiss for Failure to State a Claim at 10 n.2 (July 26, 2022), ECF No. 23.

including whether the defendants below were state actors. This Court reviews a trial court's ruling on a motion to dismiss *de novo*, which "requires us to review the District Court's order anew and without any deference." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 230 (3d Cir. 2008). When considering a Rule 12(b)(6) motion to dismiss, a court must "'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" *Id.* at 231 (quoting *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)).

### B.    Mr. Wilkofsky's Employer, a Public Employer for Government Collective Bargaining, Is a State Actor

As the district court and the Symphony itself recognized, the Symphony is a public employer under Pennsylvania's public employment law, entitled to engage in public-sector collective bargaining—as the Symphony has done. Rather than respect the Commonwealth's grant of public-employer status to the Symphony in the situation before it, the district court conducted its analysis from an incorrect premise: It assumed from the outset that the Symphony is a private entity for all purposes, which is directly counter to Pennsylvania's public employment law. Because its decision ultimately failed to recognize the import of the statute and the actions the Symphony takes as a public employer, the court erred and its decision below should be reversed.

According to the Third Circuit, "[t]he state action principle is stated succinctly as follows: [A]t base, constitutional standards are invoked only when it can be said that the [government] is *responsible* for the specific conduct of which the plaintiff complains." *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141–42 (3d Cir. 1995) (internal quotations omitted). To show that the action is "fairly attributable" to the state, a plaintiff must show that the acts were "the exercise of some right or privilege created by the State or by a rule of conduct imposed by the state or by a person for whom the State is responsible," and that the defendants "may fairly be said to be state actors." *Angelico v. Lehigh Valley Hosp., Inc.*, 184 F.3d 268, 277 (3d Cir. 1999). "A person may be found to be a state actor when (1) he is a state official, (2) 'he has acted together with or has obtained significant aid from state officials,' or (3) his conduct is, by its nature, chargeable to the state." *Id.*

Here, because the state is responsible for the conduct—because it is a public employer that is performing the unconstitutional activity—state action is present.

1. The governing statute makes clear that a public employer (the Symphony) is a party to the conduct Mr. Wilkofsky challenges.

Pennsylvania law authorizes public employers to engage in collective bargaining. Pennsylvania's public employment law, PERA, grants collective bargaining power to public employers and unions to negotiate and control the employment terms of public employees. It is under the public employment law that the Symphony and Union organized and negotiated. Accordingly, the Symphony is a state actor because

the Commonwealth designated it as a state actor and cloaked it with the authority and power of the state to act as a public employer when it participates in collective bargaining and related actions.

The Pennsylvania Legislature specifically defined the entities that it considers to be public employers who may engage in collective bargaining regarding public employees. *See* 43 P.S. § 1101.301(1). In doing so, the Legislature granted enumerated entities the power to act as a public agency. *See id.* States have broad authority to set up their governmental entities and organizations as they wish. *See McMillian v. Monroe Cnty.*, 520 U.S. 781, 795 (1997) (noting "a crucial axiom of our government: the States have wide authority to set up their state and local government as they wish"). Within its definition of "public employer," Pennsylvania includes the Commonwealth, political subdivisions, and school districts. 43 P.S. § 1101.301(1). But it also specifically chose to include other entities as public employers, such as certain nonprofit organizations and other institutions: "Public employer means the Commonwealth of Pennsylvania, its political subdivisions including school districts and any officer, board, commission, agency, authority, or other instrumentality thereof and any nonprofit organization or institution and any charitable, religious, scientific, literary, recreational, health, educational or welfare institution receiving grants or appropriations from local, State or Federal governments . . . ." 43 P.S. § 1101.301(1).

The Pennsylvania Legislature has chosen to define its public employers more broadly than some other states.[2] The statute treats all public employers equally, with the same power and obligations granted them under PERA—there is no lesser or quasi-level public employer. The public employment law lists the Commonwealth, political subdivisions, school districts, nonprofit organizations, and other institutions together, so these types of entities should be read together and presumed to have similar meaning. *See Flores v. Att'y Gen. U.S.*, 856 F.3d 280, 295 n.80 (2017) ("[*Noscitur a sociis* canon] 'instructs that when a statute contains a list, each word in that list presumptively has a similar meaning.'" (citing *Yates v. United States*, 574 U.S. 528, 549–50 (2015) (Alito, J., concurring))); *see also Giovanni v. U.S. Dep't Navy*, 906 F.3d 94, 106 (3d Cir. 2018) ("It is a standard principle of statutory construction that a word or phrase is known by the company it keeps.").

In its analysis, the lower court did not confront the implications of the statutory language of Pennsylvania's public employment law. Rather, it based its analysis on the assumption that it was dealing with two private entities, and not a

---

[2] Other states have made their choice to define public employer more narrowly than Pennsylvania, and their definitions, on their face, would likely not cause the Symphony in this matter to be considered a public employer. *See* 5 Ill. Comp. Stat. Ann. 315/3 (LexisNexis 2022); N.Y. Civ. Serv. Law § 201 (Consol. 2022); Cal. Gov't Code § 7522.04 (Deering 2022); Ohio Rev. Code Ann. § 4117.01 (LexisNexis 2022); *Ohio Historical Soc'y v. State Emp. Rels. Bd.*, 613 N.E.2d 591, 598 (Ohio 1993).

public employer, contrary to the statute. Its state action analysis was thus flawed from the start, since its foundational assumption was incorrect.

The district court from the first line of its opinion begged the question it was to decide: it repeatedly asserted that the Symphony is "private." Appx6, 8, 10, 14. And it observed that Pennsylvania's definition of public employer in PERA is "broad," suggesting it should not be literally applied. Appx12. By assuming that the Pennsylvania Legislature could not have meant what it said, the district court essentially rewrote a state statute to exclude entities the state itself had determined fall under the umbrella of state government. But it was not for the district court to determine that certain public employers, perhaps school districts or municipalities, are somehow more public than others defined in the statute. Pennsylvania's identification of public employers should be equally respected in all its aspects, not only when the listed entity seems like a typical public employer.

The district court observed that there was no discussion in *Janus* about state action because the employer was the Illinois Department of Healthcare and Family Services, and "[i]t was therefore clear that the defendant was acting under color of state law because the employer was the state itself." Appx13. But according to the Commonwealth of Pennsylvania, the same is true here. Just because the public employer is a different entity in the statutory list should not change the analysis: a state-designated public employer is acting.

11

The district court's decision is at odds with a recent decision by the Fourth Circuit. There, the court ultimately held in a Section 1983 action that a charter school was a state actor where a state statute specifically designated charter schools as "public schools" and employees of charter schools as "public school employees." *Peltier v. Charter Day Sch., Inc.*, 37 F.4th 104, 117 (4th Cir. 2022) (en banc); *see also* N.C. Gen. Stat. § 115C-218.90(a)(4). The Fourth Circuit's reasoning is instructive:

> We are not aware of any case in which the Supreme Court has rejected a state's designation of an entity as a "public" school under the unambiguous language of state law and held that the operator of such a public school was not a state actor. We are not prepared to do so here . . . . It was North Carolina's sovereign prerogative to determine whether to treat these state-created and state-funded entities as public. Rejecting the state's designation of such schools as public institutions would infringe on North Carolina's sovereign prerogative, undermining fundamental principles of federalism.

*Peltier*, 37 F.4th at 120–21. Just as the Court recognized in *Peltier*, a rejection here of the Pennsylvania Legislature's designation of the Symphony as a public employer would infringe on Pennsylvania's sovereign prerogative to set up its state government as it sees fit, "undermining fundamental principles of federalism." *See id.*

    2.    The Symphony embraced its public employer status.

Not only has the Commonwealth designated the Symphony as an arm of the government, but the Symphony sealed its fate as a state actor when it affirmatively chose to act in its capacity as a public employer.

The Symphony and the Union undertook public-sector bargaining when they engaged in organizing and collective bargaining under the public employment law. The Union correctly chose to organize and operate under Pennsylvania's public-sector collective bargaining law, because it recognized, as have all parties in this action, that the Symphony was and is a public employer for collective bargaining. The Symphony embraced its public employer status, rather than disputing it as it could have. Appx106-107 (First Am. Compl. ¶¶ 22–28). Ultimately, the Pennsylvania Labor Relations Board certified the bargaining unit under Pennsylvania's public-sector collective bargaining law, 43 P.S. § 1101.101. *See* Appx127-130 (First Am. Compl., Ex. C, PLRB Certification Order).

The Symphony and the Union have negotiated collective bargaining agreements in the decades since, and their contract still governs (and threatens) Mr. Wilkofsky's employment. In fact, their negotiated agreement contains provisions available under state law only to public employers, but not private ones. The contract has a clause requiring public employees to remain union members (or "maintain membership") for a specified period of time. Pennsylvania's public employment law specifically authorizes public employers and public employee labor organizations to negotiate for such a clause. 43 P.S. § 1101.301(8).[3] The Pennsylvania law governing

---

[3] Although the statute authorizes such provisions, it has been recognized as likely unconstitutional: In *McCahon v. Pennsylvania Turnpike Commission*, a district court preliminarily enjoined enforcement of a clause under the statute because it presented "'real or immediate danger' to [the] First Amendment right not to associate" and

private-sector collective bargaining, the Pennsylvania Labor Relations Act ("PLRA"),

is like the public employment law, PERA, in many respects. But there is a notable

difference: The PLRA does not have a provision that mirrors PERA's authorization

of "maintenance of membership" provisions in public-sector collective bargaining.

Similarly, the national private-sector bargaining law, the National Labor Relations Act

("NLRA"), also does not permit such a provision.[4] And it is precisely this exclusively

public-sector provision in their contract that the Symphony and Union are relying on

to prevent Mr. Wilkofsky from performing and to threaten his very position.

Contrary to the district court's framing in its opinion, Mr. Wilkofsky's claim is

not that the Commonwealth's permitting the Symphony to collectively bargain

establishes state action. *See* Appx6. The simple fact that Mr. Wilkofsky's employer

participated in some form of collective bargaining under a state law is not the cause of

his constitutional injury. Indeed, many private employers engage in collective

bargaining under the NLRA or the PLRA. Mr. Wilkofsky's argument does not turn

these private parties into state actors, because his argument is not that when an

organization avails itself of collective bargaining laws it somehow becomes a state

---

found that the plaintiffs were likely to succeed in establishing a constitutional violation. 491 F. Supp. 2d 522, 526–28 (M.D. Pa. 2007).

[4] In fact, if the Symphony and Union had organized under private-sector law, forcing employees to be union members or be terminated would be illegal. *See Pattern Makers' League of N. Am. v. NLRB*, 473 U.S. 95, 102 & n.11, 106 (1985) (holding that, under the National Labor Relations Act, "[f]ull union membership" could no longer "be a requirement of employment," as the Act "protects the employee whose views come to diverge from those of his union").

actor. The distinction between public employers collectively bargaining under PERA and private employers collectively bargaining under other statutes, like the PLRA or the NLRA, is that employers acting under those other statutes act as private actors. But employers engaging in bargaining authorized under Pennsylvania's public employment law are, by necessity, public employers and state actors. And that is how the Symphony bargained here: It has taken advantage of its power to collectively bargain *as a public employer* for provisions available only under the public employment law. And it is relying on those public-employment provisions to threaten Mr. Wilkofsky with termination, something only a state actor could do.

In *Peltier*, discussed above, the fact that *private* schools also exist and are regulated by law did not prevent the Court from holding that a *public* charter school, regulated by laws governing public schools, was a state actor. Similarly, here, it is not that every law that allows for and regulates collective bargaining (both public-sector and private) converts the bargainers into state actors. Rather, it is that the Commonwealth of Pennsylvania has chosen to grant the power of public-sector collective bargaining to its defined public employers, who are state actors when they act on that power.

Even setting aside that the Symphony is public, not private, in this collective bargaining context, application of the tests for private actors whose conduct is attributable to the state also confirm the state action here. This situation is akin to the scenario this Court confronted in *Krynicky v. University of Pittsburgh*, where the

Commonwealth not only provided funding to but also had statutorily entangled itself with the defendant. 742 F.2d 94, 102 (3d Cir. 1984). There, as this Court observed, beyond the state funding, there was also "the affirmative state act of statutorily accepting responsibility for" the institutions. *Id.* at 102. Here, too, the state has acted by statute, capturing the Symphony within the public government umbrella. As in *Krynicky*, "it would require a legislative enactment to disentangle" the Symphony from the Commonwealth to end its status as a public employer. *See id.* at 103. Contrary to the district court's conclusion, then, Appx14-19, the joint action present here also supports a finding of state action. And that is doubly so where the district court never analyzed the state action facts pleaded in the First Amended Complaint, relying instead on its opinion dismissing the initial complaint to later dismiss the First Amended Complaint.[5]

The Symphony is a state actor because the Pennsylvania Legislature, in exercise of its sovereign prerogative, identified the Symphony as a public employer, and thus a state actor. As authorized, the Symphony took advantage of its empowerment to bargain *as a public employer*. This Court cannot disregard the Commonwealth's choice of how to set up its own government. Likewise, the Court should not permit the

---

[5] *Compare, e.g.,* Appx18 (Opinion) (relying on no allegation of a state official), *with* Appx107 (First Am. Compl. ¶ 27) ("The Symphony's officials, as employees of a public employer, are state officials.").

Symphony to enjoy the benefits of bargaining as a public employer yet escape the accompanying constitutional responsibilities.

3.    Alternatively, remand for further development of the record related to state action would be appropriate.

If the Court believes that the Symphony's status as a public employer and its engagement in public-sector collective bargaining is not enough to establish state action, it should still reverse and remand this matter. On remand, the district court should allow discovery for development of the evidentiary record surrounding state action. Determination of action under color of state law is often a difficult, fact-specific inquiry. *Groman v. Twp. of Manalapan*, 47 F.3d 628, 638 (3d Cir. 1995). Additional facts that could further confirm state action may require discovery, making it inappropriate to conclude a lack of action under color of state law on motions to dismiss.

**C.    Mr. Wilkofsky Stated a Claim for Violation of His Constitutional Rights Because His Public Employer Is Compelling Him to Support a Union**

Mr. Wilkofsky's substantive claim is a straightforward application of United States Supreme Court caselaw: Four years ago, the Supreme Court held that public employers cannot force public employees who are not members of the union to support the union as a condition of their employment. But that is exactly what the Symphony is doing here—preventing Mr. Wilkofsky from performing and threatening him with termination unless he becomes a union member and pays union dues. So

Mr. Wilkofsky has stated a claim for an ongoing violation of his First Amendment rights.

"To state a claim under 42 U.S.C. § 1983, 'a plaintiff must allege the violation of a right secured by the Constitution and the laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law.'" *Abraham v. Raso*, 183 F.3d 279, 287 (3d Cir. 1999) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)).

As discussed above, the Pennsylvania Legislature has specified which public employers may participate in collective bargaining. When those entities act on that power to engage in collective bargaining as public or government employers, constitutional requirements apply. And the Supreme Court has spelled out those constitutional requirements in this context. Public employees who are not union members cannot be forced to pay union dues or fees as a condition of employment. *Janus*, 138 S. Ct. at 2486. The United States Supreme Court's First Amendment jurisprudence recognizes that both forced financial support of and affiliation with a union implicate a public employee's First Amendment rights. "Forcing free and independent individuals to endorse ideas they find objectionable is always demeaning . . . [and c]ompelling a person to *subsidize* the speech of other private speakers raises similar First Amendment concerns." *Id.* at 2464. Indeed, "'[a] significant impingement on First Amendment rights' occurs when public employees are required to provide financial support for a union that 'takes many positions during

collective bargaining that have powerful political and civic consequences.'" *Id.* (quoting *Knox v. SEIU, Local 1000*, 567 U.S. 298, 310–11 (2012)).

Mr. Wilkofsky is not a union member, and has not been a member or paid dues to the Union since 2021. Appx109 (First Am. Compl. ¶ 48). As a public employee who is no longer a union member, Mr. Wilkofsky is entitled to his rights recognized in *Janus*, which protect him from being compelled to pay union dues or fees as a condition of his employment. But instead of honoring his constitutional rights, the Symphony and Union are coercing him to pay the Union now and in the future under threat of termination, even though he is not a union member. This is in direct contradiction of the Supreme Court's ruling in *Janus*.

## CONCLUSION

For more than two decades, the Symphony and Union have taken advantage of the Symphony's public employer status to participate in public-sector collective bargaining. They claim that they can do so without respecting public employees' constitutional rights. The Constitution says otherwise. Because Mr. Wilkofsky adequately pleaded that his public employer is violating his right as a public employee not to support a union, this Court should reverse the district court's dismissal of this case and remand for further proceedings.

Respectfully submitted,

November 17, 2022

*s/ Danielle R. Acker Susanj*
Danielle R. Acker Susanj
Pa. Attorney I.D. No. 316208

Nathan J. McGrath
Pa. Attorney I.D. No. 308845
Tessa E. Shurr
Pa. Attorney I.D. No. 330733
THE FAIRNESS CENTER
500 North Third Street, Suite 600B
Harrisburg, Pennsylvania 17101
Phone: 844.293.1001

*Attorneys for Appellant*

No. 22-2742

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

GLEN WILKOFSKY,
*Appellant,*

v.

AMERICAN FEDERATION OF MUSICIANS LOCAL 45;
ALLENTOWN SYMPHONY ASSOCIATION INC,
*Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## JOINT APPENDIX
## VOLUME I OF II (PAGES 1–19)

DANIELLE R. ACKER SUSANJ
NATHAN J. MCGRATH
TESSA E. SHURR
The Fairness Center
500 North Third Street, Suite 600B
Harrisburg, Pennsylvania 17101
Phone: 844.293.1001

*Attorneys for Appellant*

## JOINT APPENDIX TABLE OF CONTENTS

### VOLUME I

1. Notice of Appeal (ECF No. 29) .......................................................... Appx1

2. Order (ECF No. 28) ........................................................................ Appx3

3. Order (ECF No. 20) ........................................................................ Appx5

4. Opinion (ECF No. 19) ..................................................................... Appx6

### VOLUME II

5. Civil Docket Report, U.S. District Court for the Eastern District of
   Pennsylvania, Case 5:22-cv-1424-JFL ............................................. Appx20

6. Complaint (ECF No. 21) ................................................................. Appx24

7. Exhibit A to Complaint (ECF No. 1-3) ............................................. Appx34

8. First Motion to Dismiss for Failure to State a Claim, by American Federation
   of Musicians, Local 45, with accompanying Exhibits A–F (ECF No. 6) ....... Appx39

9. Motion to Dismiss for Failure to State a Claim, by Allentown Symphony
   Association Inc (ECF No. 11) .......................................................... Appx94

10. Exhibit G to Motion to Dismiss for Failure to State a Claim, by Allentown
    Symphony Association Inc (ECF No. 11-1) ....................................... Appx97

11. First Amended Complaint (ECF No. 21) ......................................... Appx103

12. Exhibit A to First Amended Complaint (ECF No. 21-1) ..................... Appx117

13. Exhibit B to First Amended Complaint (ECF No. 21-2) ..................... Appx120

14. Exhibit C to First Amended Complaint (ECF No. 21-3) ..................... Appx127

i

15. Exhibit D to First Amended Complaint (ECF No. 21-4) ..............................Appx131

16. Second Motion to Dismiss for Failure to State a Claim, by American
    Federation of Musicians, Local 45, with accompanying Exhibits A–F
    (ECF No. 22) ...................................................................................................Appx137

17. Motion to Dismiss for Failure to State a Claim, by Allentown Symphony
    Association Inc (ECF No. 24) ..........................................................................Appx183

18. Exhibit A to Motion to Dismiss for Failure to State a Claim, by Allentown
    Symphony Association Inc (ECF No. 24-2) ....................................................Appx186

19. Exhibit B to Motion to Dismiss for Failure to State a Claim, by Allentown
    Symphony Association Inc (ECF No. 24-3) ....................................................Appx199

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

GLEN WILKOFSKY,

      Plaintiff,

v.

AMERICAN FEDERATION OF MUSICIANS,
LOCAL 45; ALLENTOWN SYMPHONY
ASSOCIATION INC,

      Defendants.

**Case No. 5:22-cv-1424-JFL**

(Hon. Joseph F. Leeson, Jr.)

**NOTICE OF APPEAL**

Notice is hereby given that Plaintiff Glen Wilkofsky appeals to the United States Court of Appeals for the Third Circuit from this Court's Opinion, ECF No. 19, entered on June 29, 2022, and Order, ECF No. 28, entered on August 19, 2022, granting Defendants' motions to dismiss, ECF Nos. 22 and 24.

Dated: September 16, 2022

*s/ Danielle R. Acker Susanj*
Danielle R. Acker Susanj
Pa. Attorney I.D. No. 316208
Email: drasusanj@fairnesscenter.org
Nathan J. McGrath
Pa. Attorney I.D. No. 308845
Email: njmcgrath@fairnesscenter.org
Tessa E. Shurr
Pa. Attorney I.D. No. 330733
Email: teshurr@fairnesscenter.org
THE FAIRNESS CENTER
500 North Third Street, Suite 600B
Harrisburg, Pennsylvania 17101
Phone: 844.293.1001
Facsimile: 717.307.3424

Appx1

**CERTIFICATE OF SERVICE**

I hereby certify that on this date a copy of the foregoing notice of appeal was filed

electronically. Notice of this filing will be sent by email to all parties by operation of the Court's

CM/ECF system.


Dated: September 16, 2022              *s/ Danielle R. Acker Susanj*
                                      Danielle R. Acker Susanj
                                      Pa. Attorney I.D. No. 316208
                                      Email: drasusanj@fairnesscenter.org
                                      THE FAIRNESS CENTER
                                      500 North Third Street, Suite 600B
                                      Harrisburg, Pennsylvania 17101
                                      Phone: 844.293.1001
                                      Facsimile: 717.307.3424

Appx2

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

_____

GLEN WILKOFSKY,                          :
      Plaintiff,                        :
                                        :
    v.                                    :     No. 5:22-cv-1424
                                        :
AMERICAN FEDERATION OF                   :
MUSICIANS, LOCAL 45, and                 :
ALLENTOWN SYMPHONY                       :
ASSOCIATION INC,                         :
      Defendants.                       :

_____

# **O R D E R**

    **AND NOW**, this 19th day of August, 2022, upon consideration of Defendants' motions to dismiss, Plaintiff's response in opposition, Defendants' replies, and for the reasons given in the Opinion issued on June 29, 2022[1], *see* ECF No. 19, **IT IS HEREBY ORDERED AS FOLLOWS**:

1. Defendants' motions, ECF Nos. 22 and 24, are **GRANTED**;

2. Plaintiff's Amended Complaint is **DISMISSED with prejudice**[2]; and

3. This case is **CLOSED**.

---

[1]     The Amended Complaint is substantively the same as the Complaint. And Plaintiff's argument alleging state action is the same: "The Symphony is a state actor because the Pennsylvania Legislature, in exercise of its sovereign prerogative, specifically recognized the Symphony as a public employer, and thus a state actor." ECF No. 25. As a result, the Court does not see the need to restate its reasoning for dismissal that it already gave in a prior opinion. *See* ECF No. 19.

    Citations to exhibits in the prior opinion will not match exactly to those attached to the Amended Complaint and the newly filed briefs. However, all of the same documents the Court relied on in its prior opinion are properly before the Court again now. *See* ECF No. 21, Ex.'s A–D; *see also* ECF No. 22, Ex. E.

[2]     The Court dismisses the Amended Complaint with prejudice because Plaintiff had an opportunity to cure his complaint's deficiencies but did not. Any additional amendments would therefore be futile. *See Boyd v. New Jersey Dept. of Corrections*, 583 Fed. Appx. 30, 32 (3d Cir. 2014).

Appx3

BY THE COURT:

_/s/ Joseph F. Leeson, Jr._
JOSEPH F. LEESON, JR.
United States District Judge

Appx4

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

_____

GLEN WILKOFSKY,                           :
        Plaintiff,                   :
                                      :
        v.                             :    No. 5:22-cv-1424
                                      :
AMERICAN FEDERATION OF                    :
MUSICIANS, LOCAL 45, and                  :
ALLENTOWN SYMPHONY                        :
ASSOCIATION INC,                          :
        Defendants.                  :
_____

## O R D E R

    **AND NOW**, this 29th day of June, 2022, upon consideration of Defendants' motions to

dismiss, Plaintiff's response in opposition, Defendants' replies, and for the reasons given in the

Opinion issued this date, **IT IS HEREBY ORDERED AS FOLLOWS**:

1. Defendants' motions, ECF Nos. 6 and 11, are **GRANTED**;

2. Plaintiff's Complaint is **DISMISSED without prejudice[1]**; and

3. Plaintiff has **14 days from the date of this Order** to file an amended complaint if he wishes

    to re-plead his dismissed claim.


                        BY THE COURT:


                        _/s/ Joseph F. Leeson, Jr._____
                        JOSEPH F. LEESON, JR.
                        United States District Judge


---

[1]    The Court dismisses the Complaint without prejudice because it cannot determine at this
time whether an amendment would be futile.

Appx5

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

_____

GLEN WILKOFSKY, : 
      Plaintiff, : 
: 
v. :    No. 5:22-cv-1424
: 
AMERICAN FEDERATION OF : 
MUSICIANS, LOCAL 45, and : 
ALLENTOWN SYMPHONY : 
ASSOCIATION INC, : 
      Defendants. : 

_____

## O P I N I O N
**Defendants' motions to dismiss, ECF Nos. 6 and 11 – Granted**

**Joseph F. Leeson, Jr.**                                  **June 29, 2022**
**United States District Judge**

### I.     INTRODUCTION

This case raises the question: does a private party act under color of state law simply because the state permits their conduct? The answer is no.

Glen Wilkofsky joined the Allentown Symphony Association as the principal timpanist in 2001. Shortly after the Symphony hired Wilkofsky, he became a member of a union of musicians and regularly paid the necessary union dues.

Wilkofsky did not want to be a part of the union, nor did he want to pay the union dues, but a collective bargaining agreement, which had been entered into by the union and the Symphony, requires union membership as a condition of employment. For that reason, Wilkofsky begrudgingly maintained his membership in the union.

Then the Supreme Court decided *Janus v. American Federation of State, County, and Municipal Employees, Council, 31, et al.*, 138 S. Ct. 2448 (2018). In *Janus*, the Supreme Court held

that it was unconstitutional to force public employees to pay union dues when they are not members of the union because the arrangement violated freedom of speech. *See id.* at 2460.

Relying on *Janus*, Wilkofsky decided to stop paying his union dues. As a result, he was expelled from the union, and the Symphony has not allowed him to perform since. Wilkofsky brought suit against the Symphony and the union's representative, American Federation of Musicians, Local 45, alleging that the collective bargaining agreement violates his First and Fourteenth Amendment rights by forcing him to maintain his membership status in the union. *See* Compl., ECF No. 1.

The Defendants filed a motion to dismiss the Complaint for failure to state a claim upon which relief can be granted. *See* Mot., ECF No. 6.[1] In their Motion, the Defendants contend that Wilkofsky's claim must fail because they are not state actors. In a response to the Motion, Wilkofsky contends that the Defendants are state actors because, among other reasons, the state authorized them to engage in collective bargaining. *See* Resp., ECF No. 14.

The Court agrees with the Defendants. Wilkofsky has not alleged facts sufficient to show that the Defendants are state actors. The challenged conduct in this case is private conduct. Since the First and Fourteenth Amendments "erect[] no shield against merely private conduct, however discriminatory or wrongful," the Court dismisses the Complaint without prejudice. *See Shelley v. Kraemer*, 334 U.S. 1, 13 (1948).

---

[1]    In truth, the Defendants each filed their own motions to dismiss. *See* ECF No.'s 6 and 11. However, the motions are substantively identical. So, the Court treats the two motions as one and analyzes them together in this Opinion.

## II.    BACKGROUND[2]

The Allentown Symphony Association, is a private, non-profit corporation, located in Allentown, Pennsylvania. *See* Mot., Ex. F. The Symphony employs multiple musicians to perform in the Allentown Symphony Orchestra. *See* Compl. ¶¶ 11, 17.

In 1999, musicians employed by the Symphony elected the American Federation of Musicians, Local 45, a private entity specializing in representing musicians, to act as their exclusive representative for the purpose of negotiating with the Symphony with respect to wages, hours, and terms and conditions of employment. *See* Mot., Ex. E. Pursuant to the Public Employee Relations Act (PERA), the Pennsylvania Labor Relations Board certified the Federation as the exclusive representative for the musicians, giving the Federation the authority to engage in collective bargaining with the Symphony on behalf of the musicians. *See id*.

The Symphony and the Federation have entered into a series of collective bargaining agreements over the years. In 2019, the Federation entered into a new collective bargaining agreement with the Symphony on behalf of the musicians (the CBA). *See* Mot., Ex. A, CBA. All existing and new full-time and part-time musician employees are subject to the CBA.

The CBA states that the Symphony recognizes the Federation "as the sole and exclusive representative of the Musicians" it employs "in accordance with the certification issued by the Pennsylvania Labor Relations Board." CBA. The CBA also recognizes the existence of a union and

---

[2]    Most of the facts are taken from the Complaint and accepted as true, with all reasonable inferences drawn in Wilkofsky's favor. *See Lundy v. Monroe Cty. Dist. Attorney's Office*, No. 3:17-CV-2255, 2017 WL 9362911, at *1 (M.D. Pa. Dec. 11, 2017), *report and recommendation adopted*, 2018 WL 2219033 (M.D. Pa. May 15, 2018). Other facts are taken from an exhibit attached to the Complaint and exhibits attached to the Motion that are matters of public record and are not disputed by the parties. *See Mayer v. Belichick*, 605 F. 3d 223, 230 (3d Cir. 2010).

The Court's recitation of the facts does not include legal conclusions or contentions unless necessary for context. *See Brown v. Kaiser Found. Health Plan of Mid-Atl. States, Inc.*, No. 1:19-CV-1190, 2019 WL 7281928, at *2 (M.D. Pa. Dec. 27, 2019).

a union steward that works to "assist the Union in the negotiation, enforcement and administration of" the CBA. *Id*. Under the CBA, each musician is required to become members of the union and maintain their union membership as a condition of employment. *See* Compl. ¶ 16. If a musician fails to maintain their membership in the union, then the Symphony may terminate their employment. *See id*. ¶ 17.

In 2001, Wilkofsky auditioned for the Symphony and was selected for the role of Principal Timpanist. *See id.* ¶ 18. Within one month of beginning his role, he became a union member at the direction of the Symphony. *See id.* ¶ 20. Pursuant to the CBA, he was required to pay union dues as a condition of his employment. *See id.* ¶ 21. Wilkofsky paid his union dues for nearly two decades in order to remain employed with the Symphony even though he did not want to be a member of the union. *See id*. ¶ 22. However, he stopped paying union dues after the Supreme Court decided *Janus*. *See id.* ¶ 25.

The union notified Wilkofsky by email that he had been placed "on the suspended list" because he had not paid his dues in violation of the CBA. *See id.* ¶ 27. Wilkofsky still refused to pay the union dues, and the union sent him three separate letters informing him that he had been expelled from the union. *See id.* ¶ 28. Consequently, the Symphony prohibited Wilkofsky from performing with the orchestra and warned him that he may be terminated if he does not rejoin the union and pay the necessary dues. *See id.* ¶¶ 6, 35–36. Wilkofsky desires to perform with the orchestra, but he objects to paying the dues on the basis it violates his constitutional rights.

Wilkofsky brought suit under the Federal Civil Rights Act of 1871, 42 U.S.C. section 1983. He alleges that the Federation and the Symphony collectively violated his First and Fourteenth Amendment rights by forcing him to become a member of, and to financially support, the union or lose his position.

Appx9

The Federation and the Symphony filed a motion to dismiss the Complaint, contending that they have not acted under color of state law for purposes of section 1983 because they are private actors.

## III.    LEGAL STANDARD

Under Rule 12(b)(6), a defendant may make a motion to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When ruling on a motion to dismiss, this Court must "accept all factual allegations as true [and] construe the complaint in the light most favorable to the plaintiff." *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd*., 292 F.3d 361, 374 n.7 (3d Cir. 2002)) (cleaned up). Only if "the '[f]actual allegations . . . raise a right to relief above the speculative level'" has the plaintiff stated a plausible claim. *Id.* at 234 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 540, 555 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* (explaining that determining "whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense"). The defendant bears the burden of demonstrating that a plaintiff has failed to state a claim upon which relief can be granted. *See Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (*citing Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)). Additionally, when ruling on a motion to dismiss, the Court may "consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputed authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F. 3d 223, 230 (3d Cir. 2010).

## IV.    ANALYSIS

"The First Amendment, made applicable to the States by the Fourteenth Amendment, forbids abridgment of the freedom of speech." *Janus v. Am. Fed'n of State, Cnty., & Mun. Emps., Council 31*, 138 S. Ct. 2448, 2463 (2018). Equally important, however, is the right not to speak. "Compelling individuals to mouth support for views they find objectionable violates that cardinal constitutional command, and in most contexts, any such effort would be universally condemned." *Id*.

It was for that reason that the Supreme Court struck down an Illinois law in *Janus* that forced public employees to subsidize a union even if they chose not to join. *See id.* at 2478. The Supreme Court reasoned that such a law violated free speech rights because it compelled nonmembers to subsidize private speech on matters of public concern. *See id.* at 2460.

Relying on *Janus*, Wilkofsky brings a single claim under section 1983, alleging that the Defendants violated his First and Fourteenth Amendment rights while acting under color of state law. In their Motion, the Defendants contend that the Complaint should be dismissed because they did not act under color of state law.[3]

Since Wilkofsky's section 1983 claim relies entirely on PERA, the Court first briefly reviews that act. With that in mind, the Court then analyzes Wilkofsky's claim and whether the Defendants acted under color of state law, concluding that they did not.

### a.    PERA

PERA is a Pennsylvania act that was passed to "promote orderly and constructive relationships between public employers and their employees." Public Employee Relations Act

---

[3]    The Defendants make an alternative argument that even if they were state actors, *Janus* would not apply in this case because Wilkofsky was a union member, not a nonmember. The Court does not address that argument in this Opinion because it determines that the Defendants did not act under color of state law, but it notes that, at least at first glance, it appears that the Complaint could be dismissed under the Defendants' alternative argument too.

(PERA), Act of July 23, 1970, P.L. 563, 43 P.S. § 1101.101. The act gives all public employees the right to form unions and to select an exclusive representative to bargain on their behalf with their public employer. *See id.* § 401.

The definition of "Public employer" for purposes of PERA is broad. Not only does it include "the Commonwealth of Pennsylvania" and "its political subdivisions", but it also includes any "nonprofit organization or institution and any charitable, religious, scientific, literary, recreational, health, educational or welfare institution receiving grants or appropriations from local, State or Federal governments." *Id.* § 301(1). It further defines "Public employee" to mean any individual employed by a "public employer" as that term is defined in the act. *Id.* § 301(2).

Under PERA, if thirty percent or more of employees employed by a public employer "desire to be exclusively represented for collective bargaining purposes by a designated representative," then the employees may hold an election to select a representative. *Id.* § 603. If the employees elect an exclusive representative by a majority vote, then the Pennsylvania Labor Relations Board may certify that representative. *See id.* §§ 603–5. PERA also provides a procedure for decertifying a representative if thirty percent of employees desire to do so or if a public employer desires to do so. *See id.* § 607.

Once certified, an exclusive representative has authority under PERA to engage in collective bargaining with the public employer on behalf of the employees. *See id.* § 701. This includes the authority to enter into a collective bargaining agreement. *See id.* § 901. If a public employer and representative enter into an agreement, then the agreement must "be reduced to writing and signed by the parties." *Id.* § 901.

Although PERA allows employees to form unions and select representatives for the purpose of collective bargaining, it does not allow parties to "implement a provision in a collective bargaining agreement if the implementation of that provision would be in violation of" any

Pennsylvania law. *See id.* § 703. Moreover, while PERA permits collective bargaining agreements that require employees to maintain membership in a union, *see id.* §§ 401,705, it does not require such provisions. Indeed, PERA does not mandate what, if any, provisions must be included in any collective bargaining agreement or whether parties must enter into an agreement.

In this case, musicians employed by the Symphony utilized PERA to form a union and elected the Federation to act as their exclusive representative. The representative and the Symphony then entered into the CBA, which requires Wilkofsky to maintain membership in the union and to pay the necessary dues.

Although the Symphony is a private entity, it is considered a "public employer" for purposes of PERA. But is that enough to transform the Defendants' actions in this case into state action? Having reviewed PERA, the Court turns next to that very question.

    *b.   Section 1983 Claim*

To bring a successful claim under section 1983, a plaintiff must prove two elements: "(1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Schneyder v. Smith*, 653 F.3d 313, 319 (3d Cir. 2011).

Relying on *Janus*, Wilkofsky asserts that the Defendants violated his freedom of speech by requiring him to maintain his union membership as a condition of employment. It is true that in *Janus* the Supreme Court held that collective bargaining agreements that compel public employee nonmembers to pay union dues are unconstitutional. However, the Supreme Court never addressed the issue of state action in *Janus* because the plaintiff was employed by the Illinois Department of Healthcare and Family Services. *See Janus*, 138 S. Ct. 2448, 2461 (2018). It was therefore clear that the defendant was acting under color of state law because the employer was the state itself.

Appx13

The issue is not as clear here, and *Janus* does not offer much help in determining whether state action exists in this case. Indeed, the Supreme Court specifically chose not to answer the question of whether state action exists when the state allows, but does not require, private parties to enter into collective bargaining agreements that may contain certain provisions. *See id.* at 2479 n. 24. Since the Defendants in this case are private actors, the Court must first determine whether they acted under color of state law.

### i. Defendants are not state actors because their conduct is not fairly attributable to the State.

"Most rights secured by the Constitution are protected only against infringement by governments." *Flagg Bros. v. Brooks*, 436 U.S. 149, 156 (1978). This requirement for state action "preserves an area of individual freedom by limiting the reach of federal law and federal judicial power." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 936 (1982). Thus, in order for a plaintiff to bring a claim alleging their constitutional rights have been infringed by a private actor, the plaintiff must show that the acts of the private actor are "fairly attributable to the State." *Id.* at 937.

Conduct that deprives a plaintiff of a federal right is fairly attributable to the state when (1) the deprivation is caused by "the exercise of some right or privilege created by the State or by a rule of conduct imposed by the state or by a person for whom the State is responsible"; and (2) the party charged with the deprivation "may fairly be said to be a state actor." *Id*. The Defendants in this case take issue with the second element, arguing that they are not state actors.

A party may be found to be a state actor when (i) they are a state official, (ii) they act together with or obtained significant aid from state officials, or (iii) their conduct, by its nature, is chargeable to the state. *Id*. "Without a limit such as this, private parties could face constitutional litigation whenever they seek to rely on some state rule governing their interactions with the community surrounding them." *Id*. In other words, courts consider "the extent to which the actor relies on governmental assistance and benefits; whether the actor is performing a traditional

governmental function; and whether the injury to the plaintiff is aggravated in a unique way by the incidents of governmental authority." *White v. Commc'ns Workers of Am., AFL-CIO, Loc. 1300*, 370 F.3d 346, 350 (3d Cir. 2004) (cleaned up).

Wilkofsky contends that the Defendants are state actors for two reasons. First, because the Defendants engaged in collective bargaining under the authorization of state law. Second, because the Symphony is a "public employer" as that term is defined in PERA. Neither argument is persuasive.

According to Wilkofsky's first argument, because the state authorized the Defendants to enter into the CBA, and the Defendants did what the state authorized them to do, they are therefore state actors. The Supreme Court, however, has rejected that exact argument. *See White* at 353–54 ("the Supreme Court rejected the argument that a legislature's express permission of a practice is sufficient to make the act of engaging in that practice state action") (*citing Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40 (1999)). If parties became state actors simply because they engaged in conduct that has been permitted by the state, then the state action doctrine would be ineffectual. This determination is supported by how the Supreme Court applied the state action doctrine to a public utility company in *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345 (1974).

In *Jackson*, the state issued a certificate of public convenience to a public utility company, allowing the utility company to deliver electricity to certain areas. *See id.* at 346. The state also gave the utility company a monopoly and heavily regulated its business. *See id.* at 346, 351–52. Under a provision of its "tariff" with the state, the utility company had the authority to turn off power to any customer for lack of payment so long as it gave reasonable notice to the customer. *See id.* at 346.

The utility company shut off the plaintiff's power, and the plaintiff filed suit against the utility company under the Civil Rights Act of 1871. *See id.* at 347. The district court dismissed the plaintiff's complaint "on the ground that the termination did not constitute state action and hence

was not subject to judicial scrutiny under the Fourteenth amendment." *See id*. at 349. The United States Court of Appeals for the Third Circuit affirmed, and the Supreme Court granted certiorari. *See id.*

The Supreme Court agreed with the lower courts, determining that the utility company was not a state actor. The Court reasoned that the "mere fact that a business is subject to state regulation does not by itself convert its action into that of the State for purposes of the Fourteenth amendment." *Id.* at 350. Even though the state approved the utility company's conduct by issuing it a certificate, provided it with a monopoly, and regulated its business, there was no state action because the state was "not sufficiently connected" with the utility's conduct of turning off the plaintiff's power. *See id.* at 358–59.

Simply put, conduct "allowed by state law where the initiative comes from [a private party] and not from the State, does not make its action in doing so 'state action' for purposes of the Fourteenth Amendment." *Id.* at 357. If this were not the case, then any person with a driver's license would become a state actor each time they got behind the wheel because they received their license to drive from the state.

Other examples of private individuals acting under the permission of state law, or examples of individuals who receive some sort of license from the state before participating in certain conduct, are too numerous to list in this Opinion. This is all to say that the question is not whether the state permits the challenged act, "the inquiry must be whether there is a sufficiently close nexus between the State and the challenged action of the [private party] so that the action of the latter may be fairly treated as that of the State itself." *Id.* at 351.

In this case, the state permitted the Defendants to enter into the CBA. However, Wilkofsky does not allege any other involvement by the state that brought the CBA to fruition. It was the musicians who elected the Federation as their exclusive representative; it was the Federation who

utilized PERA to engage in collective bargaining with the Symphony; and it was the Symphony and Federation who agreed to the terms of the CBA and entered into the same. "The fact that the parties availed themselves of the collective bargaining procedures established by PERA is not sufficient to establish state action." *Oliver v. Serv. Emps. Int'l Union Loc. 668*, 415 F. Supp. 3d 602, 611 (E.D. Pa. 2019).

Wilkofsky's first argument therefore fails as a matter of law. The fact that the state simply permitted the Defendants to enter into the CBA does not mean they acted under color of state law.

The Court now turns to Wilkofsky's second argument—that the Symphony is a state actor because it is considered a "public employer" under PERA. If accepted, this argument would also make the state action doctrine ineffectual because it evades the "fairly attributable" test altogether.

Wilkofsky suggests that the Court need not consider the challenged conduct here because PERA defines the Symphony as a public employer. According to Wilkofsky, PERA's broad definition of "public employer," which includes the Symphony, acts as a short cut to determine that the Defendants acted under color of state law. Indeed, in the Response, Wilkofsky does not even attempt to apply the "fairly attributable" test that he relies on. *See* Resp. 4.

It is clear, however, that this Court cannot take a short cut when determining whether state action exists. "[D]eciding whether 'there has been state action *requires* an inquiry into whether there is a sufficiently close nexus between the State and the challenged action of [the Defendants] so that the action of the latter may be fairly treated as that of the State itself'" *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1142 (3d Cir. 1995) (emphasis added) (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982)).

That inquiry "begins by identifying the specific conduct of which the plaintiff complains." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 51 (1999) (cleaned up). Here, Wilkofsky complains specifically about the provision in the CBA that requires him to maintain his membership

in the union in order to remain employed with the Symphony. Having identified the challenged conduct, the Court next analyzes the conduct under the lens of the fairly attributable test.

*Whether the Defendants are state officials.* The first factor is straightforward and does not support a determination that the Defendants are state actors. Wilkofsky does not allege that either defendant is a state official. Indeed, the Symphony is a private non-profit corporation, and the Federation is a private entity too.

*Whether the Defendants acted together with or obtained significant aid from state officials.* The second factor does not suggest state action either. Wilkofsky does not allege that the Defendants acted with the state in drafting or entering into the CBA.

He does assert that the Defendants bring their conduct within the realm of state action by relying on the State to enforce the CBA. *See* Resp. 6. n. 5. However, "[i]f the fact that the government enforces privately negotiated contracts rendered any act taken pursuant to a contract state action, the state action doctrine would have little meaning." *White,* 370 F.3d 346, 351 (3d Cir. 2004). In order for the Defendants to be state actors, they must have obtained significant aid from state officials regarding the challenged conduct. Wilkofsky has not alleged any such aid.

*Whether the Defendants' conduct, by its nature, is chargeable to the state.* Finally, the third factor also weighs against state action. Wilkofsky has not alleged any facts as to why the challenged conduct is chargeable to the state by its nature. The crux of Wilkofsky's claim is that the Defendants may be held liable under section 1983 because the state authorized the challenged conduct. However, "[a]ction taken by private entities with the mere approval or acquiescence of the State is not state action." *Am. Mfrs. Mut. Ins. Co.*, 526 U.S. 40, 53 (1999).

As PERA states, the Symphony may be considered a "public employer" for the purposes of the act. *See* Public Employee Relations Act (PERA), Act of July 23, 1970, P.L. 563, 43 P.S. §

1101.301. However, that does not automatically mean that the Symphony is a "public employer" for the purposes of section 1983. *See Oliver*, 415 F. Supp. 3d 602, 609 (E.D. Pa. 2019).

The Defendants do not perform a function delegated by the state, nor are they entwined with government policies or management. *See Id.* at 610. The leadership, bylaws, operations, and priorities of the union in this case are all determined by its membership, not by the state. *See id*. The union "has not been delegated any state functions, nor does it rely upon material resources from the state in carrying about its own activities. Additionally, although public sector collective bargaining is sanctioned by the Commonwealth, [the union] does not play a managerial role in shaping government policies or management decisions." *Id.* "All these facts would indicate that [the Defendants are] not a state actors." *See id.*

Since Wilkofsky has not alleged any facts to support that the Defendants are state actors, the Complaint fails as a matter of law.

**V.    CONCLUSION**

Wilkofsky's section 1983 claim against the private Defendants only lies if the Defendants acted under color of sate law. Wilkofsky has failed to allege any facts to support that the Defendants are state actors. The Complaint therefore fails as a matter of law. As a result, the Court grants the Defendants' motion and dismisses the Complaint without prejudice.

A separate Order follows.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge

Appx19

# CERTIFICATIONS

The undersigned hereby certifies the following:

a.  All attorneys whose names appear on this brief are a member of the bar of this Court.

b.  This brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 32(a)(7). It contains 4,740 words according to the word processing system used to prepare this brief.

c.  The text of the electronic version of this brief is identical to the text in the paper copies of this brief sent to this Court and opposing counsel.

d.  The virus protection program, Sophos Endpoint Agent V.2022.2.2.1, has been run on the electronic, PDF file of this brief and related attachments and no virus was detected.

e.  This brief, related attachments, and Joint Appendix Volume I have been electronically filed and served this day with the Clerk of Court using the Court's CM/ECF system. Appellees were served on this day electronically through the Court's docketing system which constitutes service under Local Appellate Rule Misc. 113.4(a). One (1) paper copy of this brief, related attachments, and Joint Appendix Volume I was mailed to opposing counsel on this day via commercial carrier as follows:

> Quintes D. Taglioli
> Markowitz & Richman
> 121 North Cedar Crest Boulevard, 2nd Floor

Allentown, Pennsylvania 18104

Robert Mahoney
Norris McLaughlin PA
400 Crossing Boulevard, 8th Floor
Bridgewater, New Jersey 08807

Rebecca J. Price
Norris McLaughlin PA
515 West Hamilton Street, Suite 502
Allentown, Pennsylvania 18101

Seven (7) paper copies of this brief, related attachments, and Joint Appendix

Volume I were mailed via commercial carrier on this day to this Court at 21400

U.S. Courthouse, 601 Market Street, Philadelphia, Pennsylvania 19106-1790.


Respectfully submitted,

November 17, 2022           *s/ Danielle R. Acker Susanj*
                            Danielle R. Acker Susanj
                            Pa. Attorney I.D. No. 316208
                            THE FAIRNESS CENTER
                            500 North Third Street, Suite 600B
                            Harrisburg, Pennsylvania 17101
                            Phone: 844.293.1001

                            *Attorney for Appellant*