NO. 22-2742

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

---

GLEN WILKOFSKY,

Plaintiff/Appellant

v.

AMERICAN FEDERATION OF MUSICIANS LOCAL 45 AND
ALLENTOWN SYMPHONY ASSOCIATION, INC.,

Defendants/Appellees

---

Appeal from the Order dated August 19, 2022 in the United States District Court
for the Eastern District of Pennsylvania at Docket No. 5:22-cv-1424

---

## BRIEF ON BEHALF OF APPELLEE,
## AMERICAN FEDERATION OF MUSICIANS LOCAL 45

---

Quintes D. Taglioli, Esquire
**MARKOWITZ & RICHMAN**
121 N. Cedar Crest Blvd., Second Fl.
Allentown, PA  18104
qdtaglioli@markowitzandrichman.com
610-820-9531; 610-820-9445 (fax)
Pa. I.D. No. 30158

*Attorney for Defendant/Appellee*
*American Federation of Musicians Local 45*

# TABLE OF CONTENTS

**Page**

**TABLE OF AUTHORITIES**……………….…………………………………... iii

I.     JURISDICTIONAL STATEMENT….…………………………………… 1

II.     STATEMENT OF ISSUES……………….…………………………….. 3

III.     STATEMENT OF RELATED CASES AND PROCEEDINGS………….. 4

IV.     STATEMENT OF THE CASE………………………………………… 5

V.     SUMMARY OF ARGUMENT…………………………………….. 10

VI.     STANDARD OF REVIEW……………………………………… 11

VII.     ARGUMENT………………………………………………… 14

    A. *JANUS* DOES NOT APPLY TO THE SYMPHONY SINCE THE
       SYMPHONY IS NEITHER A STATE ACTOR NOR ACTING
       UNDER COLOR OF STATE LAW ALTHOUGH IT WAS
       DEFINED AS A PUBLIC EMPLOYER BY REASON OF
       PERA FOR PURPOSES OF THE 1999 CERTIFICATION………… 14

    1. Neither the Symphony nor the Union are state actors or acted
      under color of state law and therefore, *Janus* does not apply
      to the Plaintiff…………………………………………………… 14

    2. PERA's definition of public employer, as applied to the
      Symphony in 1999 does not make the Symphony or the Union a
      state actor or a party that acted under color of
      state law...………………………………………………………… 19

    3. Wilkofsky has made no argument addressing three determinative
      factors to establish state action and ignored this Court's decision
      in *White v. Communications Workers'*…………………………….. 22

i

B. WILKOFSKY'S CITATION TO AUTHORITIES AND
STATUTES IS MISPLACED, INAPPLICABLE,
OR NOT SUPPORTIVE OF HIS
ARGUMENTS ……………………………………….……………… 28

1. Wilkofsky's citation to *Krynicky v. University of Pittsburgh* to
support his argument that the Symphony is a state actor
is incorrect ……………………………………………………………… 28

2. *Peltier v. Charter Day Sch., Inc.* does not support Plaintiff's
position as it is easily distinguishable…………………………………29

3. Because private employers covered by the PLRA and NLRA
are not subject to *Janus* does not mean that all employers are
bound by PERA are controlled by *Janus*………………….……………. 31

VIII.   CONCLUSION……………………………………………………… 34

# TABLE OF AUTHORITIES

**Federal Cases**                                              **Page**

*Abood vs. Detroit Board of Education*, 431 U.S. 209, 97 S.Ct. 1789,
52 L.Ed.2 261 (1977)…………………………………………………… 14

*Am. Manufacturers Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 119 S.Ct. 977,
143 L.Ed.2d 130 (1999)………………………………………………….25, 27

*Ashcroft vs. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed. 2d 868 (2009)……11

*Bell Atl. Corp. vs. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed. 2d 929
(2008)..………………………………………………………………………11

*Blum v. Yaretsky*, 457 U.S. 991, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982)…...15, 23

*Commc'ns Workers of Am. v. Beck*, 487 U.S. 735, 101 L. Ed. 2d 634, 108
S. Ct. 2641 (1998)…………………………………………………………… 26, 32

*Jackson v. Met. Edison Co.*, 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.3d 477
(1974)……………………………………………………………………. 31

*Janus v. AFSCME Council 31*, 138 S.Ct. 2448,                 6, 7, 10, 14, 15, 19,
201 L.Ed. 924 (2018)…………………………………………………22, 25, 31, 33

*Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 102 S.Ct. 2744,
73 L.Ed.2d 482 (1982)……………………………………………………. 23, 25

*Rendell-Baker v. Kohn*, 457 U.S. 830, 102 S.Ct. 2764, 73 L.Ed. 2d 418
(1982)……………………………………………………………………. 16

*Angelico v. Lehigh Valley Hosp., Inc.*, 184 F.3d 268 (3d Cir. 1999)…………… 25

iii

*Benn v. Universal Health System*, 371 F.3d 165 (3d Cir. 2004)……………….. 16

*Caviness v. Horizon Community Learning Center, Inc.*, 590 F.3d
    806 (9th Cir. 2010)………………………………………………………………...31

*Chester County Intermediate Unit vs. Pennsylvania Blue Shield*, 896
    F.2d 808 (3d Cir. 1990)…………………………………………………………….. 12

*Collins v. Womancare*, 878 F.2d 1145 (9th Cir. 1989)…………………………...15

*Crissman v. Dover Downs Entm't, Inc.*, 289 F.3d 231 (3d Cir. 2002)………….. 17

*Fowler vs. UPMC Shadyside*, 578 F.3d 203 (3d Cir. 2009)…………………….. 11

*Groman v. Twp. of Manalapan*, 47 F.3d 628 (3d Cir. 1995)……………………. 17

*Kach v. Hose*, 589 F.3d 626 (3d Cir. 2009)……………………………………….. 17, 29

*Kolinske v. Lubbers*, 712 F.2d 471 (D.C. Cir. 1983)……………………………. 26

*Krynicky v. University of Pittsburgh*, 742 F.2d 94 (3d Cir. 1984)………………. 28

*Leshko v. Servis*, 423 F.3d 337 (3d Cir. 2005)……………………………16, 17, 23

*Mark v. Borough of Hatboro,* 51 F.3d 1137 (3d Cir. 1995)…………..13, 16, 17, 23

*N.Y. Shipping Ass'n., Inc. v. Waterfront Comm'n of N.Y. Harbor*,
    835 F.3d 344 (3d Cir. 2016)……………………………………………………… 11

*Peltier v. Charter Day Sch., Inc.*, 37 F.4th 104 (4th Cir. 2022)…………………..  29

*Pension Benefit Guaranty Corp. vs. White Consolidated Industries*,
    998 F.2d 1192 (3d Cir. 1993)………………………………………………… 12, 13

*Phillips vs. County of Allegheny*, 515 F.3d, 224 (3d Cir. 2008)………………… 12

*PRBA Corp. v. HMS Host Toll Roads, Inc.*, 808 F.3d 221 (3d Cir. 2015)……… 33

*White v. Communications Workers of America., AFL-CIO, Local 13000*, 370 F.3d 346 (3d Cir. 2004)…………………………………...22, 24, 25, 26

**District Court Cases**

*Oliver v. SEIU Local 668*, 415 F.Supp.3d 602 (ED Pa. 2019)………………..17, 23

*Ponsford v. Mercyhurst Univ.*, Civil Action No. 19-217, 2020 U.S. Dist. LEXIS 37125*, 2020 W.L. 1049180 (WD Pa. 2020)………………………18, 29

*Spay vs. CBS Care Mark Corp.*, 913 F.Supp.2d, 125 (ED PA 2012)……………13

*Toner v. Geico Insurance Co.*, 262 F.Supp. 3d 200 (ED PA 2017)………………13

*Wenzig v. SEIU Local 668,* 426 F.Supp. 3d. 88 (MDPA 2019)…………………..17

**State Cases**

*Philadelphia Assoc of Interns & Residents v. Albert Einstein Medical Center*, 470 Pa 562, 369 A.2d 711 (1976)………………………………………………21

**Federal Statutes**

U.S. Const. amend XIV § 1……………………………………………………….15

Labor Management Relations Act, of 1947, Act of June 23, 1947, § 1, 29 U.S.C. § 141 *et seq*………………………………………………………...21

42 U.S.C. § 1983……………………………………………………….1, 3, 15

National Labor Relations Act, 29 U.S.C. § 151 *et seq*……………18, 21, 25 27, 32

## <u>State Statutes</u>

5, 7, 8, 10, 14, 18, 19

Public Employee Relations Act (PERA), Act of July 23,          20, 21, 22, 23, 24
 1970, P.L. 563, as amended, 43 P.S. § 1101.101 *et seq*………..27, 30, 31, 32, 33

Pennsylvania Labor Relations Act, Act of 1937-294, P.L. 1168
 § 1 *et seq*., 43 P.S. § 211.1 *et seq*…………………………………….6, 20, 32

# I. <u>JURISDICTIONAL STATEMENT</u>

## A.  SUBJECT MATTER JURISDICTION

Glen Wilkofsky's (Wilkofsky/Plaintiff/Appellant) First Amended Complaint against American Federation of Musicians, Local 45 (Local 45/Union/Appellee) and the Allentown Symphony Association, Inc. (Symphony/Employer/Appellee) that was dismissed by the District Court alleged a violation of his First Amendment rights and consequently, his First Amended Complaint was based upon a violation of 42 U.S.C. § 1983.  The District Court had jurisdiction pursuant to 28 U.S.C.§ 1331.

## B.  APPELLATE JURISDICTION

This Honorable Court has jurisdiction over this Appeal pursuant to U.S.C. § 1291 because the Order of the United States District Court for the Eastern District of Pennsylvania granting the Motion to Dismiss the First Amended Complaint is a final decision.

1

## C.  FILING DATES

The District Court's Order dismissing Plaintiff's First Amended Complaint was filed on August 19, 2022.  Appellant filed his Notice of Appeal on September 16, 2022 making his Appeal timely as the Notice was filed within thirty (30) days from the District Court's Order.

## D.  ASSERTION OF FINAL ORDER

The District Court's Order dated August 19, 2022 granting Defendants' Motions to Dismiss dismissed the Appellant's Amended Complaint with prejudice and closed the case.  Appellant's Appeal is from the Final Order that disposed of all parties' claims.

2

II.    <u>STATEMENT OF ISSUES</u>


A.    WHETHER THE DISTRICT COURT ERRED IN DISMISSING APPELLANT'S AMENDED COMPLAINT WHEN APPELLANT'S FIRST AMENDED COMPLAINT RAISED A CLAIM PURSUANT TO 42 U.S.C. § 1983 ALLEGING A VIOLATION OF HIS FIRST AMENDMENT RIGHTS AND APPELLANT DID NOT ESTABLISH THAT THE APPELLEES WERE STATE ACTORS OR THAT THE APPELLEES ACTED UNDER COLOR OF STATE LAW?

(Raised by First Amended Complaint; Motions to Dismiss, and Final Order dismissing Appellant's First Amended Complaint with prejudice).

## III.  STATEMENT OF RELATED CASES AND PROCEEDINGS

This case or proceeding has not been before this Court previously and Appellee is not aware of any case or proceeding that is in any way related, completed, pending, or about to be presented before this Court or any other court or agency, state or federal.

4

IV. <u>STATEMENT OF THE CASE</u>

A. FACTS

Plaintiff asserted that the Union and the Symphony entered into a series of Collective Bargaining Agreements (CBAs) concerning wages, hours, and conditions of employment for employees of the Symphony. Wilkofsky alleged that he had been employed by the Symphony since 2001 and maintained his membership in the Union until January, 2020. Appx108-109; Pl. First Amend. Compl., ¶¶ 38-40, 45-46.

The CBA relevant to the instant dispute covers the period from July 1, 2019 through June 30, 2023. Appx141-173; Motion to Dismiss Pl. First Amend. Comp., Exh. "A". As a condition of employment, the CBA contains maintenance of membership language that requires members to maintain their membership in the Union during the term of the CBA with the right to resign from membership during a fifteen-day window at the expiration of the CBA consistent with Section 301(18) of the Public Employee Relations Act (PERA), Act of July 23, 1970, P.L. 563, as amended, 43 P.S. § 1101.301(18). Appx142-143; Motion to Dismiss Pl. First Amend. Comp., Exh. A., Art. 2.

In January, 2020, Wilkofsky decided to cease paying dues to the Union in violation of the provisions in Article 2 of the CBA. Appx109; Pl. First Amend.

5

Compl., ¶46.    Accordingly, the Union notified Wilkofsky, on at least three occasions, that he had been expelled from membership due to his refusal to pay Union dues as required by Article 2.  Appx174-177, 109; Motion to Dismiss Pl. First Amend. Compl., Exhs. "B", "C" & "D"; Pl. First Amend. Compl., ¶¶ 47-50.   Due to his failure to pay Union dues, the Symphony has not allowed Wilkofsky to perform with the orchestra since May 20, 2021.  Appx10; Pl. First Amend. Compl., ¶ 52.

The Union was certified as the collective bargaining representative for all full-time and regular part-time musicians employed by the Symphony.  The Pennsylvania Labor Relations Board (PLRB) issued a Certification on November 23, 1999, after it conducted a Secret Ballot Election on November 12, 1999, in accordance with the PLRB's Order and Notice of Election issued on August 12, 1999.  Appx117-130; Pl. First Amend. Compl., ¶ 19-31 & Exhs. A, B & C.

Plaintiff alleged that as a consequence of the Supreme Court's Decision in *Janus v. AFSCME Council 31*, 138 S.Ct. 2448, 201 L.Ed. 924 (2018), the Symphony and the Union have violated his rights under the First and Fourteenth Amendments of the United States Constitution by compelling him to provide financial support to the Union.  Appx103; Pl. First Amend. Compl., ¶ 1.  Wilkofsky further alleged that the Symphony and the Union have acted under color of state law because in the 1999

election Section 301(1) of PERA was used to define the Symphony as a public employer for the purposes of PERA, and therefore the Symphony and the Union were state actors or acting under color of state law thereby making the principles of *Janus* applicable to the instant matter.

In response, the Symphony and the Union established that the Symphony was a private, non-profit (Non Stock) corporation organized pursuant to the laws of the Commonwealth of Pennsylvania.  Appx138, 178-179; Motion to Dismiss Pl. First Amended Comp.  Additionally, there was no allegation that the Commonwealth anticipated or was in any way involved in negotiations and creation of the CBA.

## B. PROCEDURAL HISTORY

On April 11, 2022, Plaintiff/Appellant filed a Complaint alleging the Symphony and the Union violated his First Amendment Rights by enforcing a Maintenance of Membership clause set forth in the Collective Bargaining Agreement between the Union and the Symphony.  Plaintiff alleged that enforcement of this provision in the CBA gave rise to a cause of action under § 1983. On May 6, 2022, the Union filed a Motion to Dismiss based on Appellant's failure to state a claim pursuant to F.R.C.P. 12(b)(6).  Appx39-93.  On May 9, 2022, the Symphony filed a similar Motion to Dismiss.  Appx94-102.

7

On June 29, 2022, the District Court entered an Order and Opinion dismissing the Plaintiff's Complaint without prejudice and granting Wilkofsky fourteen (14) days from the date of the Order to file an Amended Complaint. Appx5. By Opinion and Order, the Court properly noted that in order for a § 1983 action to have any basis, the conduct complained of must be committed by a person acting under color of state law. The Court addressed and rejected Wilkofsky's arguments concerning whether Appellants acted under color of state law because of the statutory framework established by PERA. This Court noted that simply because the Symphony was defined as a public employer under PERA does not mean that it acted under color of state law for purposes of a § 1983 action. Appx6-19.

On July 13, 2022, Plaintiff filed a First Amended Complaint raising the same allegations with some additional facts. Appx103-136. On July 26, 2022 and July 27, 2022, respectively, the Union and the Symphony again filed Motions to Dismiss pursuant to Rule 12(b)(6). On August 19, 2022, the District Court issued an Order granting Defendants' Motion to Dismiss and dismissing the Plaintiff's First Amended Complaint with prejudice. Appx3. The Court noted that the Plaintiff's First Amended Complaint was "substantively the same as the Complaint." Consequently, the District Court did not "see the need to restate its reasoning for dismissal that it already gave in a prior Opinion." The District Court dismissed the

8

First Amended Complaint "…with prejudice because Plaintiff had an opportunity to cure his complaint deficiencies but did not.  Any additional amendments would therefore be futile."  Appx3.


### C.  RULINGS PRESENTED FOR REVIEW

The District Court granted the Defendants Motions to Dismiss the Plaintiff's Complaint without prejudice and issued an Opinion in support thereof.  After Wilkofsky filed his First Amended Complaint, the District Court again granted both Defendants Motions to Dismiss and dismissed the Plaintiff's First Amended Complaint with prejudice, relying on its Opinion in support of its Order to dismiss the Complaint.

## V.  SUMMARY OF ARGUMENT

The Plaintiff's argument that the Supreme Court's Decision in *Janus* applies to his employment with the Symphony and membership requirements with the Union is misplaced.  Simply because the employees utilized PERA to organize as a union in 1999 does not convert the Symphony or the Union into a state actor or one that acted under color of state law.  The definition section of PERA limits the categorization of the Symphony as a public employer in the application of PERA only and does not expand that definition to the application of *Janus.  Janus* is based upon a constitutional deprivation by a state actor or a defendant acting under color of state law and neither the Union nor the Symphony meet any part of the threefold test required to establish that a Defendant acted under color of state law.  None of the authorities cited by Wilkofsky support his arguments that state action can be found in this case.  Instead, Wilkofsky ignores the mandate of establishing state action in order for a 1983 action to prevail.  The District Court analyzed the facts alleged by Wilkofsky and properly concluded, after inquiry that no state action exists in this case.

VI. <u>STANDARD OF REVIEW</u>

This Court's standard of review of the District Court's grant of a Motion to Dismiss is plenary. *N.Y. Shipping Ass'n., Inc. v. Waterfront Comm'n of N.Y. Harbor*, 835 F.3d 344, 352 (3d Cir. 2016).  On review, this Court applies the same standard as the District Court.  *Id.*  To survive a motion to dismiss, a complaint must state a claim for relief that is plausible on its face.  *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d. 868 (2009).

Local 45 filed a Motion to Dismiss pursuant to F.R.C.P. 12(b)(6) for failure to state a cognizable claim as a matter of law.  Since the Supreme Court's decision in *Iqbal*, plaintiffs must plead more than the possibility of relief to survive a Motion to Dismiss.  A Complaint must contain sufficient factual matter, accepted as true, that states a claim to relief that is plausible on its face.  *Iqbal*; (citing *Bell Atl. Corp. vs. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed. 2d 929 (2008); *Fowler vs. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009)).  This plausibility standard requires more than a mere possibility that a defendant has acted unlawfully.  A complainant must plead facts that are more than just "threadbare recitals of the elements of a cause of action, supported by mere conclusionary statements…" *Id.,* quoting *Iqbal*, 129 S.Ct. at 1949.  A plaintiff must plead factual content that permits the court to draw the reasonable inference that the defendant is liable for the conduct

11

alleged. *Id*.

When presented with a Motion to Dismiss for failure to state a claim, Courts are required to conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a Court must determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief". *Iqbal*, 129 S.Ct. at 1950. In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complainant has to "show" such an entitlement with facts. See *Phillips vs. County of Allegheny*, 515 F.3d, 224, 234-35 (3d Cir. 2008). The Supreme Court held that a Court must perform a "context-specific" task that requires it to draw upon its "…judicial experience and common sense". *Iqbal*, 129 S.Ct. at 1949. And in resolving Rule 12(b)(6) motions, a Court may look beyond the complaint to matters of public record, including court files and records, and documents referenced in the complaint that are essential to plaintiffs' claims which are attached to a defendant's motion. *Pension Benefit Guaranty Corp. vs. White Consolidated Industries*, 998 F.2d 1192, 1196 (3d Cir. 1993); *Chester County Intermediate Unit vs. Pennsylvania Blue Shield*, 896 F.2d 808, 812 (3d Cir. 1990).

Under this standard, administrative filings such as the Corporation Bureau

12

records concerning the nature of the existence of the Symphony that were attached to the Union's Motion to Dismiss may be considered by the Court without converting a motion to dismiss into a motion for summary judgment.  Appx178-179; Motion to Dismiss Pl. First Amend. Compl., Exh. E.  See *Pension Benefit Guaranty Corp.*, 998 F.2d at 1196-97", *U.S. ex rel. Spay vs. CBS Care Mark Corp.*, 913 F.Supp.2d, 125 (ED PA 2012); *Toner v. Geico Insurance Co.*, 262 F.Supp. 3d 200 (ED PA 2017).

VII. <u>ARGUMENT</u>

    A. *JANUS* DOES NOT APPLY TO THE SYMPHONY SINCE THE SYMPHONY IS NEITHER A STATE ACTOR NOR ACTING UNDER COLOR OF STATE LAW ALTHOUGH IT WAS DEFINED AS A PUBLIC EMPLOYER BY REASON OF PERA FOR PURPOSES OF THE 1999 PLRB CERTIFICATION.

    1. <u>Neither the Symphony nor the Union are state actors or acted under color of state law and, therefore, *Janus* does not apply to the Plaintiff.</u>

The Plaintiff's argument that there was a violation of his First and Fourteenth Amendment rights is predicated upon the theory that *Janus* applies to the instant matter. A review of *Janus* and its progeny shows that *Janus* does not apply here because of the lack of state actor or action under color of state law.

In *Janus*, public sector employees brought a challenge to an Illinois law that "forced (them) to subsidize the union, even if they ch(o)se not to join and strongly object(ed) to the positions CTU t(ook) in collective bargaining and related activities". 138 S.Ct. at 2459-60. The Court held that such an "agency fee" arrangement – so called because the employees who declined to join CTU still had to pay an "agency" or fair share fee – violated the First Amendment right of non-member employees "by compelling them to subsidize private speech on matters of substantial concern", overruling *Abood vs. Detroit Board of Education*, 431 U.S. 209, 97 S.Ct. 1789, 52 L.Ed.2 261 (1977). *Id.* at 2460. The Court explained that

14

compelling non-members to subsidize the activities of a public sector union by automatically deducting fair share fees runs afoul of the First Amendment absent an employee's affirmative consent and waiver of such right. *Janus*, 138 S.Ct. at 2486.

In this matter, the basis of the Plaintiff's First Amended Complaint was that it arises under the Constitution and laws of the United States of America – "specifically the Federal Civil Rights Act of 1871, 42 U.S.C. § 1983". Appx103; Pl. First Amend. Compl., ¶4. It is well-established that in order to establish a claim under Section 1983, a plaintiff must show either that a state actor deprived a person of a constitutional right or that a defendant acted "under color of state law." *Collins v. Womancare*, 878 F.2d 1145, 1147 (9th Cir.) 1989. The Supreme Court has long held that "merely private conduct, however, discriminatory or wrongful," falls outside the purview of the Fourteenth Amendment. *Blum v. Yaretsky*, 457 U.S. 991, 1002, 102 S.Ct. 2777, 73 L.Ed. 2d. 534 (1982).

Plaintiff relies upon the allegation that the Symphony and the Union have acted under color of state law. Appx103, 108, 111-113; Pl. First Amend. Compl., ¶¶ 1, 32, 66, 70 & 74. The Fourteenth Amendment upon which this Section 1983 claim is based, provides that "no State shall … deprive any person of life, liberty, or property, without due process of law…" U.S. Const. amend XIV § 1. The Fourteenth Amendment governs only state conduct not that of private citizens.

15

*Rendell-Baker v. Kohn*, 457 U.S. 830, 837-38, 102 S.Ct. 2764, 73 L.Ed. 2d 418 (1982). In other words, "(S)ection 1983 subjects to liability those who deprive persons of federal, constitutional, or statutory rights under color of any statute, ordinance, regulation, custom, or usage of a state." *Leshko v. Servis*, 423 F.3d 337, 339 (3d Cir. 2005) (citation omitted) "Under color of state law" and "state action" are interpreted identically under the Fourteenth Amendment. *Id.* at 339; see also *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995). Thus, a plaintiff seeking to hold an individual liable under Section 1983 must establish that he was deprived of a federal constitution or statutory right by a state actor. See *Benn v. Universal Health System*, 371 F.3d 165, 169-80 (3d Cir.) 2004.

Clearly, there is no state actor in this matter. The Symphony is located in the City of Allentown, County of Lehigh, and Commonwealth of Pennsylvania. The Commonwealth, the County, and the City are, without dispute, state actors. The Symphony is a private, Non-Profit (Non Stock) corporation duly organized. Appx105, 178-179; Motion to Dismiss, Exh. "E" and Pl. First Amend. Compl. ¶ 12. Thus, the Plaintiff cannot rely upon state action by the Symphony.[1]

---

[1] For purposes of its Motion to Dismiss and this appeal, Local 45 assumes it is in the same position as the Symphony as it relates to the allegations by the Plaintiff of state action or color of state law. The Courts in the Eastern and Middle Districts may be split on the issue of whether or not a union becomes a state actor or acts under color of state law simply by entering into a collective bargaining agreement with a state

While the Supreme Court has noted that there exists no "simple line" between state and private actors, *Brentwood Acad v. Tenn. Secondary Sch. Athletic Ass'n.,* 531 U.S. 288, 295, 121 S.Ct. 924, 148 L.Ed. 2d 807 (2001), this Circuit has held that "(T)he principal question at stake is whether there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself." *Leshko*, 423 F.3d at 339 (internal quotation marks and citations omitted). This Court has set forth three broad tests generated by the Supreme Court's holdings to determine whether state action under color of state law exists: (1) "Whether the private entity has exercised powers that are traditionally the exclusive prerogative of the State"; (2) "Whether the private party has acted with the help of or in concert with state officials."; and (3) "Whether the (S)tate has so far insinuated itself into a position of inter-dependence with the acting party that it must be recognized as a joint participant in the challenged activity." *Mark*, 51 F.3d at 1142 (citation omitted). "Under any test, (t)he inquiry is fact specific." *Groman v. Twp of Manalapan*, 47 F.3d 628, 638 (3d Cir. 1995); *see also, Crissman v. Dover Downs Entm't, Inc.*, 289 F.3d 231, 234 (3d Cir. 2002) *(en banc)*. *Kach v. Hose*, 589

---

actor or one that acts under color of state law. See *Oliver v. SEIU Local 668,* 415 F. Supp 3d. 602 (ED PA 2019) as opposed to *Wenzig v. SEIU Local 668, 426* F.Supp. 3d. 88, 93 n. 5 (MDPA 2019).

F.3d 626 (3d Cir. 2009); *Ponsford v. Mercyhurst Univ.*, Civil Action No. 19-217, 2020 U.S. Dist. LEXIS 37125*; 2020 WL 1049180 (WD Pa. 2020).

Wilkofsky did not raise any factual allegation in his First Amended Complaint that would show reliance upon any of the three tests. His entire argument was based upon the concept that because the Union was certified by the PLRB pursuant to PERA, and as used in that Act the definition of public employer, included the Symphony, the Symphony is therefore a state actor or acted under color of state law when it entered into the CBA that requires the maintenance of membership in the Union during the term of the CBA.

Local 45 will address each of these tests *seriatim*. First, by entering into a CBA with the Union, the Symphony did not exercise powers that are traditionally the exclusive prerogative of the state. Private entities such as the Symphony have been entering into collective bargaining agreements with unions for the last eighty-seven (87) years since the passage of the Wagner Act in 1935.[2]

The second test is whether the Symphony acted with the help of or in concert with state officials. There is no allegation that state officials assisted the Symphony in entering into a CBA with the Union mandating the maintenance of membership.

---

[2] The Wagner Act was amended by the Taft-Hartley Act in 1947 and is now more commonly referred to as the National Labor Relations Act. *29 U.S.C. § 151 et seq.*

Plaintiff made no such allegation because the negotiation and creation of the CBA was done without the help of, or in concert with, state officials.

Lastly, the Appellant fails to meet the third test since he has not alleged that the state has insinuated itself into a position of inter-dependence with the Symphony and it must be recognized as a joint participant in the negotiation and execution of the CBA at issue. There is no such allegation because there is no inter-dependence between the state and the Symphony in the negotiation and execution of the CBA. Neither the Symphony nor the Union acted under color of state law and, therefore, there is no cognizable claim under Section 1983.

### 2. PERA's definition of public employer, as applied to the Symphony in 1999 does not make the Symphony or the Union a state actor or a party that acted under color of state law.

Rather than rely upon the test outlined by this Circuit, the Plaintiff makes the logical leap that because the Symphony was defined as a public employer in 1999 for purposes of PERA, there must be state action which would then implicate *Janus.* Appx106-108, 111-112; Pl. First Amend. Compl., ¶¶ 19-34, 66-77, 70. In his First Amended Complaint, the Plaintiff cites certain parts of Section 301(1) of PERA in support of his argument that the Symphony is either a state actor or acted under color of state law. Appx105; Pl. First Amend. Compl., ¶ 11. The relevant provisions of

PERA are as follows:

As used in this Act:

(1) "PUBLIC EMPLOYER" means the Commonwealth of Pennsylvania, its political subdivisions including school districts and any officer, board, commission, agency, authority, or other instrumentality thereof and any nonprofit organization or institution and any charitable, religious, scientific, literary, recreational, health, educational or welfare institute receiving grants or appropriations from local, State or Federal governments but shall not include employers covered or presently subject to coverage under the act of June 1, 1937 (P.L. 1168), as amended, known as the "Pennsylvania Labor Relations Act."

(2) "PUBLIC EMPLOYE" OR "EMPLOYE" means any individual employed by a public employer but shall not include elected officials, appointees of the Governor with the advice and consent of the Senate as required by law, management level employes, conditional employes, clergymen or other persons in a religious profession, employes or personnel at church offices or facilities when utilized primarily for religious purposes and those employes covered under the act of June 24, 1968 (Act. No. 111), entitled "An act specifically authorizing collective bargaining between policemen and firemen and their public employers; providing for arbitration in order to settle disputes, and requiring compliance with collective bargaining agreements and findings of arbitrators."

(3) "EMPLOYE ORGANIZATION" means an organization of any kind, or any agency or employe representation committee or plan in which membership includes public employes, and which exists for the purpose, in whole or in part, of dealing with employers concerning grievances, employe-employer disputes, wages, rates of pay, hours of employment, or conditions of work but shall not include any organization which practices discrimination in membership because of race, color, creed, national original or political affiliation.

Section 301(1)(2) & (3) of PERA, 43 P.S. § 1101.301(1)(2) & (3).

Plaintiff has ignored the prefatory phrase contained in Section 301: "As used in this act". Clearly, the purpose of the General Assembly when it passed PERA in 1970 was to allow employees employed by entities other than the Commonwealth and its political subdivisions, including school districts, to organize and collectively bargain since that statutory right did not exist for public sector entities under the National Labor Relations Act. Hence, the inclusion of "…Any nonprofit organization or institution and any charitable, religious, scientific, literary, recreational, health, educational or welfare institution receiving grants or appropriations from local, State or Federal governments."[3]

In other words, while the Symphony is defined as a public employer in PERA for purposes of self-organization and collective bargaining, it is not considered a

---

[3] For example, hospitals and healthcare institutions were not included within the jurisdiction of the National Labor Relations Board under the "Labor Management Relations Act, of 1947, Act of June 23, 1947, § 1, 29 U.S.C. § 141 *et seq*. until 1974 Amendments to the Labor Management Relations Act brought within the jurisdiction of the National Labor Relations Board private non-profit entities such as hospitals and non-profits like the Symphony. Prior to that date, because of the exclusionary nature of the definition of employers in the prior version of the National Labor Relations Act, employees at such private institutions did not have the right to organize or collectively bargain and hence that right was provided under PERA, at least in the Commonwealth of Pennsylvania. *Philadelphia Assoc of Interns & Residents v. Albert Einstein Medical Center,* 470 Pa 562, 369 A.2d 711 (1976); see also NLRB Outline of Law and Procedure in Representation Cases, pp. 13-14 (June 2017) set forth in the National Labor Relations Board website.

public employer for any other purpose.  To do so is more than a strained interpretation of PERA and it ignores the constitutional requirement of state action or acting under color of state law as set forth above.  *Janus* itself is based upon a constitutional violation committed by the State of Illinois.  There can be no serious argument that the Symphony is a state actor like the City of Allentown, County of Lehigh, or the Commonwealth of Pennsylvania simply because the General Assembly allowed its employees to organize and collectively bargain under PERA.

In summary, the Symphony is no more a state actor or acting under color of state law than the Allentown YMCA, Lehigh Valley Health Network, Muhlenberg College, or any other not-for-profit entity in or around the City of Allentown.  Because it was defined as a public employer for purposes of PERA in 1999 does not make the Symphony a state actor or acting under color of state law.   Therefore, neither the Symphony nor the Union are subject to liability because of an application of *Janus*.

3.  Wilkofsky has made no argument addressing three determinative factors to establish state action and ignored this Court's decision in *White v. Communications Workers'*.

The heart of Wilkofsky's argument is the assertion that "the Symphony is a state actor because the Commonwealth specifically designated it as a state actor and

22

cloaked it with the authority and power of the state act as a public employer."
(Appellant's Brief, pp. 8-9).   In asserting that PERA's inclusion of non-profit
institutions receiving public funds as public employers renders the Symphony a state
actor for purposes of his lawsuit, Wilkofsky completely ignores the need to make a
case-by-case determination of the parties' status.  As the District Court recognized
in its dismissal Order, "…this Court cannot take a short cut when determining
whether state action exists.  '[D]eciding whether 'there has been state action *requires*
an inquiry into whether there is a sufficiently close nexus between the State and the
challenged action of [the Defendants] so that the action of the latter may be fairly
treated as that of the State itself'" *Mark v. Borough of Hatboro,* 51 F.3d 1137, 1142
(3d Cir. 1995) (emphasis added by District Court) (quoting *Blum v. Yaretsky*, 457
U.S. 991, 1004 (1982))."  Appx17; Opinion at 12.  *See also Oliver v. SEIU Local
668*, 415 F.Supp.3d 602, 609 (E.D. Pa. 2019) ("The primary question guiding the
inquiry is whether 'there is such a 'close nexus between the State and the challenged
action' that seemingly private behavior 'may be fairly treated as that of the State
itself.'" *Leshko*, 423 F.3d at 339 (internal quotation marks and citations omitted)).

The District Court's well-reasoned analysis of whether the allegedly infirm
conduct by the defendants was "fairly attributable to the State," as required by *Lugar
v. Edmondson Oil Co.* 457 U.S. at 936, is not challenged in Wilkofsky's appeal.  His

references to the mechanics of the PLRB in bestowing certification upon Local 45 have no bearing whatsoever upon the parties' subsequent negotiation of their collective bargaining agreement.  It is that conduct, the negotiation and enforcement of the agreement, that requires Wilkofsky to maintain his membership in the union in order to remain employed.  That is the sole determinant of whether state action exists, not the statutory declaration that the Symphony is a public employer for purposes of PERA.

As the District Court found at pages 13-14 of its Opinion, both the Symphony and Local 45 are private entities, not state officials, and neither acted together with nor obtained significant aid from state officials in negotiating or enforcing the CBA Appx18-19.  As stated at page 13, "The crux of Wilkofsky's claim is that the Defendants may be held liable under section 1983 because the state authorized the challenged conduct.  However, '[a]ction taken by private entities with the mere approval or acquiescence of the State is not state action.'"  (citation omitted). Appx18.

The District Court dismissed the Plaintiff's arguments citing *White v. Commc'ns Workers' of Am., AFL-CIO, Local 1300,* 370 F.3d 346, 350 (3d. Cir. 2004) and noted that "according to Wilkofsky's first argument, because the state authorized the Defendants to enter into the CBA, the Defendants did what the state

authorized them to do and they are therefore state actors. The Supreme Court, however, has rejected that exact argument." See *White* 353-54; Appx15.

The District Court's citation to *White* was well placed. In *White,* then Judge Alito (now Justice Alito) and author of *Janus*, rejected a similar theory concerning state action by the plaintiff. In *White,* the plaintiff alleged state action because Congress had promulgated the National Labor Relations Act which included provisions allowing for private parties to enter into collective bargaining agreements that contain union security clauses.

In an opinion by then-Judge Alito, the Court stated:

> To establish that challenged conduct was state action, a plaintiff must demonstrate two things. First, the conduct at issue must either be mandated by the state or must represent the exercise of a state-created right or privilege. *Am. Manufacturers Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50, 119 S.Ct. 977, 143 L.Ed.2d 130 (1999). Second, the party who engaged in the challenged conduct must be a person or entity that can "fairly be said to be a state actor.'" *Id.* (quoting *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 937, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982)); *see also Angelico v. Lehigh Valley Hosp., Inc.,* 184 F.3d 268, 277 (1999)....

> In determining whether a person or entity can be fairly described as a state actor, "It is relevant to examine the following: the extent to which the actor relies on governmental assistance and benefits; whether the actor is performing a traditional governmental function; and whether the injury [to the plaintiff] is aggravated in a unique way by the incidents of governmental authority." (citations omitted) White relies solely on the first of these factors, arguing that 29 U.S.C. § 159(a)(3)'s authorization of agency-shop clauses in collective bargaining agreements provides the CWA with sufficient "governmental

assistance" to render the CWA's implementation of the Opt-Out Procedure state action.

370 F.3d at 350.

In rejecting the argument that statutorily-permitted agency shop provisions in the CWA contract rendered the parties to that agreement state actors, it noted that the clauses in dispute "result from agreements between employers and unions". *Id. 351.* Noting the Plaintiff's right not to be a member and exercise his *Beck* rights,[4] the *White* Court, favorably quoted the District of Columbia Circuit:

> While the NLRA provides a framework to assist employees to organize and bargain collectively with their employers, the NLRA is neutral with respect to the content of particular agreements. The NLRA does not mandate the existence or content of, for example, seniority clauses, work rules, staffing requirements, or union security provisions like agency shop clauses or mandatory payroll deductions for union dues. Even though federal law provides an encompassing umbrella of regulation, the parties, like any two parties to a private contract, were still free to adopt or reject an agency shop clause with or without government approval. Thus, the authorization for agency shop clauses provided by NLRA section 8(a)(3) does not transform agency shop clauses into a right or privilege created by the state or one for whom the state is responsible.

*Kolinske* [*v. Lubbers*, 712 F.2d 471 (D.C.Cir. 1983)] at 478, quoted by *White at 351.*

---

[4] *Commc'ns Workers of Am. v. Beck*, 487 U.S. 735, 101 L. Ed. 2d 634, 108 S. Ct. 2641 (1998).

"If the fact that the government enforces privately negotiated contracts rendered any act taken pursuant to a contract state action, the state action doctrine would have little meaning". *White,* 370 F.3d at 351.

If one simply substitutes "PERA" for "NLRA," the reasoning quoted above, which the Third Circuit has adopted, is determinative. The mere fact that PERA permits, but leaves it up to the parties to negotiate (or not) the disputed contractual provision that Wilkofsky opposes, cannot be relied upon to establish the requisite state action for purposes of a Section 1983 lawsuit. As the *White* opinion made abundantly clear, "In *Am. Mfrs. Mut. Ins. Co. v. Sullivan, supra,* however, the Supreme Court rejected the argument that a legislature's express permission of a practice is sufficient to make the act of engaging in that practice state action." *Id.* at 353-54.

While *White* concerned the National Labor Relations Act, the analysis is applicable here as this Court has noted. Simply because the Pennsylvania General Assembly or the United States Congress promulgates laws that regulate private actors does not make private parties state actors.

## B. WILKOFSKY'S CITATION TO AUTHORITIES AND STATUTES IS MISPLACED, INAPPLICABLE, OR NOT SUPPORTIVE OF HIS ARGUMENTS.

1. <u>Wilkofsky's citation to *Krynicky v. University of Pittsburgh* to support his argument that the Symphony is a state actor is incorrect.</u>

On pages 15 and 16 of his Brief, Wilkofsky argues that the present "…situation is akin to the scenario this Court confronted in *Krynicky* v. U. of Pittsburg…" (Appellant's Brief, p. 15.) *Krynicky v. University of Pittsburgh*, 742 F.2d 94 (3d Cir. 1984) Plaintiff argues that in *Krynicky* is analogous because the Court determined that the University of Pittsburgh was a state actor for purposes of Section 1983. However, the University of Pittsburgh was created as an instrumentality of the state, designated as a "State-related university," and provided annual appropriations that were used as specified by the State and kept in a specific account, among other close ties. *Id.* at 102. This Court explicitly noted that legislative action would be required to disentangle the University of Pittsburgh from the Commonwealth and that the University not only receives funding and is subject to audits and state regulations but is an instrumentality of the State. *Id.* at 103.

There can be no analogy between *Krynicky* and this case. There is no evidence that the Symphony was created in the same fashion as the University of Pittsburgh. There is no evidence that the Symphony has the same statutory connections to the

Commonwealth as the University of Pittsburgh.  Finally, there is no allegation that the Symphony has any obligations to the Commonwealth of Pennsylvania as does the University of Pittsburgh.

For instance, Plaintiff in *Ponsford v. Mercyhurst Univ.*, Civil Action No. 19-217, 2020 U.S. Dist. LEXIS 37125*, 2020 W.L. 1049180 (WD Pa. 2020) attempted to "shoehorn her allegations into the teaching of *Kach*…" which the Court determined to be "unavailing".  220 U.S. Dist. LEXIS 37125, *p. 7.  *Ponsford* was an employee of a private university and was allegedly improperly terminated and filed a claim under Section 1983 that was dismissed for lack of state action.  She made arguments similar to Wilkofsky when attempting to prove state action or a state actor and her efforts were rebuked by the District Court for the reasons outlined above.  The Allentown Symphony is not the University of Pittsburgh and is therefore not a state actor.

2.  <u>*Peltier v. Charter Day Sch., Inc.* does not support Plaintiff's position as it is easily distinguishable</u>.

Wilkofsky's reliance upon *Peltier v. Charter Day Sch., Inc.*, 37 F.4th 104 (4th Cir. 2022) (*en banc*), cited at page 8 of his Brief, is unavailing.  Unlike the Symphony, which is a private, non-profit corporation, the charter schools in North

Carolina were, as the Fourth Circuit noted, state-created and state-funded. More importantly, the charter schools in North Carolina were providing a service traditionally borne by the State as required by its constitution. As stated by the Fourth Circuit,

> Ultimately, the state action inquiry in this case is not complicated: (1) North Carolina is required under its constitution to provide free, universal elementary and secondary schooling to the state's residents; (2) North Carolina has fulfilled this duty in part by creating and funding the public charter school system; and (3) North Carolina has exercised its sovereign prerogative to treat these state-created and state-funded schools as public institutions that perform the traditionally exclusive government function of operating the state's public schools. Accordingly, the public-school operator at issue here, CDS, implemented the skirts requirement as part of the school's educational mission, exercising the "power possessed by virtue of state law and made possible only because the [school] is clothed with the authority of state law." West, 487 U.S. at 49 (citation and internal quotation marks omitted). Under these circumstances, we will not permit North Carolina to delegate its educational responsibility to a charter school operator that is insulated from the constitutional accountability borne by other North Carolina public schools.

*Id.* 122.

In contrast, there is nothing in Pennsylvania's Constitution that requires creation of a symphony orchestra nor does Wilkofsky contend that the Commonwealth traditionally establishes such institutions. Moreover, contrary to Wilkofsky's contention that PERA's designation of nonprofit institutions as public employers ends the inquiry, and the Fourth Circuit's comment that it was not aware

of a court's rejection of a state's designation of an institution as a public school as

conferring state actor status, that is precisely what the Ninth Circuit did in *Caviness*

*v. Horizon Community Learning Center, Inc.*, 590 F.3d 806 (9th Cir. 2010).  As it

opined,

> Under § 1983, a state's statutory characterization of
> a private entity as a public actor for some purposes is not
> necessarily dispositive with respect to all of that entity's
> conduct.  *See Jackson v. Met. Edison Co.*, 419 U.S. 345,
> 350 & n. 7, 95 S.Ct. 449, 42 L.Ed.3d 477 (1974) (statutory
> designation of utility as 'public utility' insufficient to
> make utility a state actor).  Rather, a private entity may be
> designated a state actor for some purposes but still
> function as a private actor in other
> respects….Accordingly, Caviness's reliance on Arizona's
> statutory characterization of charter schools as 'public
> schools' does not itself avail him in the employment
> context."

590 F.3d at 814.  While the Symphony is a public employer for purposes of PERA,

that does not compel a conclusion that it is a state actor for purposes of a § 1983

action.

3.  Because private employers covered by the PLRA and NLRA are not subject
to *Janus* does not mean that all employers bound by PERA are controlled by *Janus*.

Wilkofsky also makes arguments concerning state action by referring to the

Pennsylvania Labor Relations Act (PLRA), Act of 1937-294, P.L. 1168 § 1 *et seq*., 43 P.S. § 211.1 *et seq*. as well as the National Labor Relations Act, 29 U.S.C. § 151 *et seq*. (NLRA).    (Appellant's Brief, pp. 14-15.)    Wilkofsky makes a circular argument that when private employers that are subject to the PLRA or the NLRA bargain, they are not state actors and the action of collective bargaining does not convert them into state actors.    (Appellant's Brief, pp. 14-15.)    That concept is accurate but it equally applies to employers such as the Symphony that negotiate pursuant to PERA.  *See White*.

Wilkofsky attempts to distinguish private employers subject to PLRA and the NLRA by noting that neither of those Acts provide for maintenance of membership provisions.  That is a correct but misleading statement about both Acts.  Section 6 of PLRA specifically allows for private employers to make an "…agreement with a labor organization to require, as a condition of employment, membership therein..." Section 6(1)(c), 43 P.S. § 211.6(1)(c).  Those words set forth in the PLRA are almost identical to Section 8(a)(3) of the NLRA, 29 U.S.C. § 158(a)(3).    Both statutes specifically allow for the requirement of union membership as a condition of employment.  Of course, that condition of membership as a condition of employment has been whittled down to the financial core as noted by the Supreme Court in *Communication Workers of America v. Beck*, 487 U.S. 735, 108 S.Ct. 2641, 101

L.Ed. 2d 634 (1988).

The allegation that there is no union membership requirement in the NLRA or the PLRA is incorrect.  To the extent that the Plaintiff is arguing that *Janus* does not apply to employers under the NLRA and PLRA, he may or may not be correct depending upon whether in each individual case there is state action, which is the mandate when analyzing state actor status.  See, e.g., *PRBA Corp. v. HMS Host Toll Roads, Inc.*, 808 F.3d 221, 224 (3d Cir. 2015) ("(o)ur analysis should also focus on evidence of explicit involvement of a governmental authority in a specific action to plaintiff's challenge").  The fact that the PLRA and the NLRA regulate private actors does not mean that the Symphony is a state actor because it is regulated by PERA.  That simple argument ignores the requirement of focusing on the involvement of the governmental entity in the specific action the plaintiff's challenge, which in this case is the negotiation and creation of a collective bargaining agreement that contains a maintenance of membership clause.  There is no state actor and there is no state action under any analysis using the criteria established in this Circuit.

33

VIII.  <u>CONCLUSION</u>

WHEREFORE, American Federation of Musicians, Local 45 prays that this Honorable Court dismiss Appellant's Appeal.

Respectfully submitted,

**MARKOWITZ & RICHMAN**

Date:  December 7, 2022        BY:   */s/ Quintes D. Taglioli, Esquire*
                             QUINTES D. TAGLIOLI, ESQUIRE
                             121 N. Cedar Crest Blvd., 2nd Fl.
                             Allentown, PA  18104
                             610-820-9531; 610-820-9445 (fax)
                             Pa. I.D. No. 30158

                             *Attorney for Defendant/Appellee*
                             *American Federation of Musicians Local 45*

## <u>CERTIFICATIONS</u>

The undersigned hereby certifies the following:

a.   All attorneys whose names appear on this brief are a member of the bar of this Court.

b.  This brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 32(a)(7).  It contains 6,712 words according to the word processing system used to prepare this brief.

c.  The text of the electronic version of this brief is identical to the text in the paper copies of this brief sent to this Court and opposing counsel.

d.  The virus protection program, ESSET NOD 32 Antivirus 16.0.24.0, has been run on the electronic, PDF file of this brief and no virus was detected.

e.  This brief has been electronically filed and served this day with the Clerk of Court using the Court's CM/ECF system.  Appellant and Appellee, Allentown Symphony Association, Inc. were served on this day electronically through the Court's docketing system which constitutes service under Local Appellate Rule Misc. 113.4(a).  One (1) paper copy of this brief was mailed to opposing counsel on this day via commercial carrier as follows:

Robert Mahoney, Esquire
NORRIS McLAUGHLIN, PA
400 Crossing Blvd., 8th Fl.
Bridgewater, NJ  08807

Danielle R. Acker Susanj
THE FAIRNESS CENTER
500 North Third St., Suite 600B
Harrisburg, PA  17101

Rebecca J. Price, Esquire
NORRIS, McLAUGHLIN, PA
515 W. Hamilton St., Suite 502
Allentown, PA  18101

An original and six (6) copies of this brief and was mailed via commercial carrier on this day to this Court at 21400 U.S. Courthouse, 601 Market Street, Philadelphia, PA 19106-1790

**MARKOWITZ & RICHMAN**

Date:  <u>December 7, 2022</u>    By:    <u>*/s/Quintes D. Taglioli, Esquire*</u>
                                     QUINTES D. TAGLIOLI, ESQUIRE
                                     Pa. I.D. No. 30158
                                     121 N. Cedar Crest Blvd., 2nd Fl.
                                     Allentown, PA  18104
                                     610-820-9531; 610-820-9445 (Fax)
                                     qdtaglioli@markowitzandrichman.com

                                     *Attorney for Defendant/Appellee,*
                                     *American Federation of Musicians Local 45*